The STATE of Ohio, Appellee,

v.

LANDRUM, Appellant.

[Cite as *State v. Landrum* (2000), 137 Ohio App.3d 718.]

Court of Appeals of Ohio,
Fourth District, Vinton County.

No. 99CA531.

Decided March 9, 2000.

*Donald A. Cox,* for appellant.

*Timothy P. Gleeson,* for appellee.

HARSHA, Judge.

Marlin J. Landrum appeals from a judgment entered by the Vinton County Court finding him guilty of an overload violation under R.C. 5577.04. He raises the following assignments of error for our review:

"I.  The Court erred in denying Defendant's Motion to suppress the arrest of Defendant and weighing of Defendant's truck."

"II.  The Court erred in denying Defendant's Motion to dismiss the charges of overload for the reason that Section 5577.04 of the Ohio Revised Code is unconstitutional."

Finding that appellant's first assignment of error has merit, we reverse the trial court's judgment.

Appellant was eastbound on Route 32 in a commercial motor vehicle when he was stopped for a safety inspection by Trooper McKeever of the Ohio State Highway Patrol.  Trooper McKeever was working with a commercial motor vehicle safety enforcement officer of the Department of Public Safety and a load inspector when he stopped appellant.  After stopping appellant, Trooper McKeever noticed appellant's truck tires were bulging, which he attributed to an overweight violation.  After weighing the vehicle, Trooper McKeever cited appellant for a violation of R.C. 5577.04(B)(3) in that his truck was 27,300 pounds over the legal limit.

Appellant filed a motion to suppress the results of the weighing of his vehicle and argued that Trooper McKeever had no articulable reason to stop appellant's vehicle in the first instance.  Appellant also filed a motion to dismiss in which he contended that R.C. 5577.04 is unconstitutional as it violates due process requirements.

At the suppression hearing, Trooper McKeever testified that he did not observe appellant commit a traffic infraction and did not observe any safety violations prior to the stop.  Appellant was flagged down at the request of the safety inspector in order to conduct an inspection.[1]  Trooper McKeever testified that under federal guidelines, commercial trucks can be stopped and inspected at any time.

At the conclusion of the hearing, the trial judge overruled appellant's motion to suppress.  Orally, the trial judge found that appellant's stop was allowed by federal law, that Trooper McKeever noticed the bulging tires following the stop and, therefore, probable cause existed to weigh appellant's truck.  No specific federal statute that authorizes random stops for safety inspections was cited by the state or the court.  The trial court also overruled appellant's motion to dismiss.  Appellant was subsequently found guilty of the overload violation, fined $981 and ordered to pay court costs.  A timely appeal was filed.

---

1.  Later in his testimony, Trooper McKeever stated that he could not recall whether he or the safety inspector suggested that appellant be stopped for an inspection.

■ In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress. Specifically, appellant argues that he was operating his vehicle in a lawful manner when he was stopped by Trooper McKeever. He further argues that R.C. 4513.33 requires that a police officer have reason to believe that the weight of a vehicle and its load are unlawful before requiring the vehicle's driver to stop and submit to a weighing; to stop a vehicle for a safety inspection, a police officer must have some articulable and reasonable suspicion that the vehicle is either unsafe or in violation of state law.

The state relies on R.C. 5503.34 to support its position that random stops of commercial vehicles for safety inspections are lawful. R.C. 5503.34 states:

"Uniformed employees of the commercial motor vehicle safety enforcement unit may stop commercial motor vehicles for the exclusive purpose of inspecting such vehicles to enforce compliance with orders and rules of the public utilities commission as required by division (F) of section 5502.01 of the Revised Code."

The state does not dispute that no suspicion of criminal activity existed, but argues that Trooper McKeever stopped appellant on behalf of the safety inspector and, therefore, the initial stop was lawful.

■ In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, *e.g.*, *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57,–58, 437 N.E.2d 583, 584–585; see, also, *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 726–727. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standard. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143; *Williams* and *Guysinger, supra.*

■■ In its appellate brief, the state relies upon R.C. 5503.34; below, the state relied upon unspecified federal law to support its position that the stop of appellant was lawful. Generally, a party cannot assert new legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124–125, 322 N.E.2d 629, 630–631. However, the Ohio Supreme Court has consistently held that a reviewing court is not authorized to reverse a correct judgment simply because the trial court has stated an erroneous basis for that judgment. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742,

745; *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175.

Here, the state has not directed us to any federal statute that supports a finding that Trooper McKeever could stop appellant for a random safety inspection. Furthermore, there is no reference to a specific federal statute in the trial record. Therefore, the trial court's judgment cannot be supported on that basis. However, we will consider the state's argument on appeal that the stop was authorized by R.C. 5503.34 to determine if the judgment can be upheld on another basis pursuant to *Myers* and *Joyce, supra.*

■ R.C. 5503.34 allows uniformed employees of the commercial motor vehicle safety enforcement unit to stop commercial motor vehicles for the sole purpose of inspecting the vehicle to enforce compliance with orders and rules of the Public Utilities Commission as required by R.C. 5502.01(F).[2] R.C. 5502.01(F) provides:

"The department of public safety shall enforce compliance with orders and rules of the public utilities commission and applicable laws in accordance with Chapters 4919., 4921., and 4923. of the Revised Code regarding commercial motor vehicle transportation safety, economic, and hazardous materials requirements.

■ A brief history of the relationship between the Public Utilities Commission and the Department of Public Safety is necessary to fully understand the significance of this provision. Originally, the authority to inspect commercial vehicles was vested in the Transportation Department of the Public Utilities Commission. The Public Utilities Commission promulgated regulations under R.C. 111.15, which outlines the procedures state agencies must follow when developing administrative rules governing the agency. Rules issued under an agency's statutory authority generally have the force of law. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538, 542. Most relevant here, the Public Utilities Commission promulgated Ohio Adm.Code 4901:2–5–13, which outlines the procedure to be utilized when enforcing R.C. Chapters 4919, 4921 and 4923. Ohio Adm.Code 4901:2–5–13 specifies the procedures Public Utilities Commission employees must follow in determining

---

**2.** While Trooper McKeever is not himself a member of the enforcement unit, he stopped appellant so that a member of the enforcement unit could conduct the inspection. State police officers have many duties and the stop is not rendered illegal by the fact that an officer rather than the administrative agent made the initial stop. See *New York v. Burger* (1987), 482 U.S. 691, 717, 107 S.Ct. 2636, 96 L.Ed.2d 601, 623 (holding that there is no constitutional significance in the fact that police officers rather than administrative agents are permitted to conduct an inspection). Therefore, the fact that appellant was stopped by a highway patrol officer and not an employee of the commercial motor vehicle safety enforcement unit is not dispositive when the inspection itself is conducted by the safety enforcement unit as required pursuant to R.C. 5503.34.

which vehicles to inspect and delineates the extent of the inspections. In particular, Ohio Adm.Code 4901:2–5–13(C) provides:

"Authorized employees of the commission's transportation department *shall utilize the following criteria in determining which documents, motor vehicles, and cargo to inspect* and which employees of an offeror or motor carrier to interview:

"(1) Complaints received and processed by the commission's transportation department headquarters staff and issued to field employees;

"(2) Observed possible violations of any rules and statutes listed in paragraph (A) of this rule;

"(3) Knowledge that the motor vehicle was recently inspected and had serious safety defects at the time of inspection;

"(4) Motor vehicles, motor carriers, and offerors designated by the headquarters staff of the commission's transportation department as 'special interest'; or

"*(5) Any uniform statistical selection procedure, such as every fifth motor vehicle or every motor vehicle entering an inspection site. Such a selection procedure shall be used when operating at a permanently or temporarily fixed inspection location on public property*, private property open to the public, or private property with permission of the owner or person in control of the property, and shall not preclude inspections which meet other criteria in paragraph (C) of this rule. *As used in this rule, 'temporarily fixed inspection location' shall include a portion of a public highway being patrolled by employees of the commission's transportation department.*" (Emphasis added.)

The employees of the Enforcement Division of the Transportation Department of the Public Utilities Commission were subsequently transferred to the Department of Public Safety. Am.Sub.S.B. No. 162. Under this personnel transfer, the Department of Public Safety was given authority to enforce compliance with the orders and rules of the Public Utilities Commission and applicable laws in accordance with R.C. Chapters 4919, 4921 and 4923. R.C. 5502.01(F). Am.Sub. S.B. No. 162 also provided, "Whenever the [Public Utilities] Commission is referred to in any law, contract, or other document relating to the employees transferred under this action, the reference shall be deemed to refer to the Director or Department of Public Safety, whichever is appropriate."

Generally, an agency is not required to follow the rules promulgated by another agency. *Fair v. School Emp. Retirement Sys.* (1978), 53 Ohio St.2d 118, 120–121, 7 O.O.3d 192, 193–194, 372 N.E.2d 814, 815–816, (holding that the School Employees Retirement System need not follow the regulations promulgated by the State Board of Education). Therefore, the employees of the commercial

motor vehicle safety enforcement unit of the Department of Public Safety would not be required to follow the regulations promulgated by the Public Utilities Commission, including Ohio Adm.Code 4901:2–5–13.

In this instance, however, Am.Sub.S.B. No. 162 states that the Department of Public Safety is substituted for the Public Utilities Commission "in any law, contract or other document relating to the employees transferred under this section." Regulations are given the same force as other laws but even if they were not intended to be "laws" for purposes of Am.Sub.S.B. No. 162, the regulations can certainly be classified as other documents. Furthermore, the regulations relate to the transferred employees in that they inform the employees how to perform their job duties. Consequently, the safety inspectors were required to follow the procedures of Ohio Adm.Code 4901:2–5–13(C) when determining which vehicles to inspect.

Therefore, we must determine whether Trooper McKeever and the safety inspectors followed the appropriate administrative procedures. Based on Trooper McKeever's testimony, it is apparent that there were no known or observed violations of any administrative rules or laws by appellant. Consequently, only subsection (5) of Ohio Adm.Code 4901:2–5–13 is applicable in this case.

Subsection (5) allows administrative stops absent suspected violations only when a uniform statistical selection procedure is utilized. No evidence that such a procedure was utilized was presented at the hearing. Trooper McKeever testified that he pulled a different truck over after observing a safety violation. While weighing that truck, appellant drove by and either Trooper McKeever or the safety inspector decided to pull appellant's truck over for a random inspection. Since a uniform statistical selection procedure was not followed, the stop of appellant was in violation of the Administrative Code requirements.

We note, however, that "the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." *State v. Geraldo* (1981), 68 Ohio St.2d 120, 129, 22 O.O.3d 366, 371 429 N.E.2d 141, 147, citing *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 235, 416 N.E.2d 598, 600. Therefore, we must determine the constitutionality of the stop absent these regulations.

The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. *Delaware v. Prouse* (1979), 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660, 672–673; *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176. In *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585, the Supreme Court held that "searches conducted outside the judicial process, without prior

approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." See, also, *State v. Sneed* (1992), 63 Ohio St.3d 3, 584 N.E.2d 1160; *State v. Braxton* (1995), 102 Ohio App.3d 28, 656 N.E.2d 970. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative-stop if the officer possesses "reasonable suspicion." *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Trooper McKeever testified, and the state concedes, that no suspicion of criminal activity or safety violations existed prior to the stop of appellant. Rather, the state argues that the safety inspector could conduct a warrantless administrative inspection of the commercial vehicle.

"An administrative search may be conducted without a warrant if the statute authorizing the search does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment." *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300. In *New York v. Burger* (1987), 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601, the United States Supreme Court held that a warrantless search of an automobile junkyard, conducted pursuant to a New York administrative inspection statute, did not violate the Fourth Amendment. The Supreme Court set forth three criteria that warrantless searches of pervasively regulated businesses must meet to be deemed reasonable. *Id.* at 702, 107 S.Ct. 2636, 96 L.Ed.2d 601, 613–614. First, there must be a "substantial" government interest that permeates the regulatory scheme pursuant to which the inspection is made. *Id.* Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." *Id.*, citing *Donovan v. Dewey* (1981), 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262, 269. Third, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id.* In other words, the regulatory statute must perform the two basic functions of a warrant. It must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. *Id.* To meet this third requirement, the statute must limit the discretion of the inspectors in "time, place, and scope." *Id.*, citing *United States v. Biswell* (1972), 406 U.S. 311, 315, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 91–92.

The random detention and inspection of a vehicle used in a closely regulated industry must, therefore, meet essentially the same requirements as a warrantless regulatory search of a business premises. *United States v. Dominguez–Prieto* (C.A.6, 1991), 923 F.2d 464. Federal regulations governing the commercial trucking industry are extensive. *Id.* at 468. "Regulations cover [drivers'] qualifications, motor vehicles' parts and accessories, reporting of acci-

dents, drivers' hours of service, inspection, repair and maintenance of motor vehicles, recording of itineraries, transportation of hazardous materials, and other safety issues." *Id.*, citing 49 C.F.R. 100–399. Commercial trucks are also heavily regulated by the state of Ohio. See R.C. Chapters 4919, 4921, and 4923. Accordingly, we must determine whether the three criteria outlined in *Burger* are present.

First, the government must have a "substantial" interest that permeates the regulatory scheme pursuant to which the inspection is made. The substantial interests of the government are evident here. Clearly, there is a need to regulate the trucking industry and ensure that trucks comport with state safety requirements. The safety requirements protect the public at large, the drivers themselves and the public roads. We find that the first requirement is met.

Second, warrantless inspections must be necessary to further the regulatory scheme. To be successful in enforcing the state safety standards, the safety inspectors must be able to frequently check the trucks passing through the state as they may quickly travel out of the jurisdiction of the enforcement unit. *Dominguez–Prieto*, 923 F.2d at 469. Due to the mobility of commercial motor vehicles, a warrant requirement would render the inspection process meaningless. Therefore, we find that warrantless inspections are critical to the regulatory scheme at issue here.

Third, the statute must provide a constitutionally adequate substitute for a warrant which limits the enforcement officers' discretion in the "time, place and scope" of the inspection. R.C. 5502.01 indicates that the Department of Public Safety must enforce compliance with specific sections of the Revised Code regarding commercial motor vehicle transportation safety, economic and hazardous materials requirements. Absent application of Ohio Adm.Code 4901:2–5–13(C), no limitations are placed on the discretion of the safety inspectors. The statute itself conveys virtually complete discretion on the motor vehicle safety enforcement unit in deciding which trucks it will stop and when they may be stopped. Therefore, we conclude that the third prong of the *Burger* test was not met if Ohio Adm.Code 4901:2–5–13(C) or a similar provision is not followed by the enforcement unit.

In sum, we find that the stop of appellant was unconstitutional and, therefore, any evidence recovered as a result of the stop must be suppressed. The state had the burden of showing that the seizure fits within one of the exceptions to the Fourth Amendment's warrant requirement. *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 67 O.O.2d 317, 313 N.E.2d 405. The state failed to meet this burden. Assuming *arguendo* that the safety inspector was not required to follow the procedures outlined in Ohio Adm.Code 4901:2–5–13, there are no other statutory or administrative limitations placed on the inspector's discretion. This void

renders the stop unlawful and any evidence discovered as a result must be suppressed.

In his second assignment of error, appellant argues that R.C. 5577.04 is unconstitutional. For the reasons stated in *State v. Nichols* (Jan. 11, 2000), Vinton App. No. 99CA532, unreported, 2000 WL 49326, we overrule appellant's second assignment of error.

Having sustained appellant's first assignment of error, we reverse the judgment and remand this matter to the trial court for further action consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE and EVANS, JJ., concur.