DECISION AND JUDGMENT ENTRY
{¶ 1} The State of Ohio appeals from the trial court's grant of Monty Boyd's motion to suppress. The state argues the trial court erred when it found the state's questioning of Boyd constituted a custodial interrogation, which required application of Miranda. Because we conclude that the state's questioning did not amount to custodial interrogation, the state was not required to give Boyd Miranda warnings or suspend questioning until he talked to his attorney. Thus, we reverse the trial court's decision.
 {¶ 2} In April 2002, Adams County Sheriff's Detective Jeff McCarty and Adams County Prosecuting Attorney's Office Investigator Kenneth Dick went to Monty Boyd's home in order to question him regarding two ongoing drug trafficking cases. At this point, the detectives were already in possession of a videotape presumably showing Boyd, a 1997 graduate of the police academy and an auxiliary police officer, selling illegal drugs to an undercover officer. However, the state had yet to file charges against Boyd. After their arrival, the detectives informed Boyd of the purpose of their visit and asked if he would talk to them. Specifically, the detectives informed Boyd "they had him on two trafficking in drugs charges." The detectives offered to conduct the questioning in their unmarked car or inside his home. Boyd agreed to talk to the detectives in his home.
 {¶ 3} Prior to and during the hour to hour and a half questioning, the detectives did not place Boyd under arrest, inform him that he could not leave his house, or restrict his movement in any way. In fact, without asking the detectives' permission, Boyd placed and received telephone calls, including a telephone call to his attorney[1], and went to the bathroom. Moreover, the detectives went back to their car, leaving Boyd alone in his home at least three times during their questioning. Nevertheless, at some point, Boyd confessed to his involvement in the drug trafficking cases. After this initial confession, the detectives asked Boyd if he would make a taped statement. Boyd replied that he would and the detectives read him hisMiranda rights for the first time. Boyd indicated that he understood his rights and wished to waive them. However, Boyd also indicated that he only wanted to give a taped statement because the detectives would arrest him if he did not. Upon hearing this, the detectives turned the tape recorder off and explained they would not arrest Boyd if he refused to give a taped statement. Following this discussion the detectives left Boyd's home without arresting him or taking his taped statement.
 {¶ 4} Later, the Adams County Grand Jury indicted Boyd on two counts of trafficking in drugs. Boyd pled not guilty and filed a motion to suppress his initial statement to the detectives. At the suppression hearing, the trial court heard testimony from Boyd and Detective McCarty. In its entry granting Boyd's motion, the trial court concluded, "considering the facts and the uncontroverted statement that the officers' immediate statement to the Defendant was that they `had him on two trafficking in drugs charges,' there is support for the Defendant's contention that the officer's were there to conduct a custodial interrogation and this required the compliance with Miranda. This court finds that under State v. Baker [sic][2] that this was a custodial interrogation."
 {¶ 5} Following the trial court's decision, the state filed this appeal, including a Crim.R. 12(K) certification, and assigned the following error:[3] "The trial court erred when it suppressed the defendant-appellee's confession."
 {¶ 6} In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Brooks,75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. Accordingly, in our review, we are bound to accept the trial court's findings of fact if it supports them with competent, credible evidence. State v. Landrum
(2000), 137 Ohio App.3d 718, 722, 739 N.E.2d 1159. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,699, 116 S.Ct. 1657, 134 L.Ed.2d 911; Landrum, supra.
 {¶ 7} Here, the state argues the trial court erred in granting Boyd's motion to suppress because Boyd's interrogation was not custodial in nature. Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. In order to protect this right, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed procedural safeguards. Miranda v. Arizona (1966), 384 U.S. 436,444, 86 S.Ct. 1602, 16 L.Ed.2d 694. But, law enforcement officers are not required to administer Miranda warnings to every person suspected in an investigation. Oregon v. Mathiason (1977), 429 U.S. 492, 495,97 S.Ct. 711, 50 L.Ed.2d 714; State v. Biros, 78 Ohio St.3d 426, 440,1997-Ohio-204, 678 N.E.2d 891. Miranda warnings are only required when an individual is subjected to "custodial interrogation." Mathiason,429 U.S. at 494; State v. Mason, 82 Ohio St.3d 144, 153-54, 1998-Ohio-370,694 N.E.2d 932. In a non-custodial interrogation, law enforcement officers do not need to give Miranda warnings and no right to counsel attaches. State v. Arnold (Mar. 30, 2000), Athens App. No. 99CA37 citing Katz, Ohio Arrest, Search and Seizure (1998), 400, T19.11(D)[4].
 {¶ 8} In Miranda, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda,384 U.S. at 444. "The ultimate inquiry is simply whether there [was] a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, 77 L.Ed.2d 1275 quoting Mathiason, supra, at 495; Mason,82 Ohio St.3d at 154. "The mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in non-custodial settings." Minnesota v. Murphy (1984), 465 U.S. 420, 431,104 S.Ct. 1136, 79 L.Ed.2d 409.
 {¶ 9} When determining whether a custodial interrogation has occurred, the relevant inquiry is whether a reasonable person in the defendant's position would have believed, under the totality of the circumstances, that he was not free to leave. Berkemer v. McCarty
(1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317; Mason,82 Ohio St.3d at 154. When reviewing the totality of the circumstances, courts should consider, the "age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Slagle (1992), 65 Ohio St.3d 597, 600,605 N.E.2d 916. See, also, State v. Barker (1978), 53 Ohio St.2d 135,372 N.E.2d 1324, paragraph two of the syllabus. The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether law enforcement conducts a custodial interrogation. Stansbury v. California (1994), 511 U.S. 318, 323,114 S.Ct. 1526, 128 L.Ed.2d 293.
 {¶ 10} In this instance, the only evidence before the trial court was the testimony of Boyd and Detective McCarty. As the trial court observed, there is no real dispute on the facts. Both parties agree the detectives arrived at Boyd's home to question him regarding two open drug investigations. Both parties also agree Boyd indicated that he wanted to talk to his attorney and tried to call him on the telephone. In addition, after receiving no answer, Boyd continued to answer questions. Boyd testified that he "believed" he was under arrest when the detectives arrived and told him that they had him on two counts of drug trafficking. But he did not testify the detectives told him they would arrest him if he chose not to talk to them.
 {¶ 11} Rather, Boyd testified that when the detectives produced a tape recorder, after he already gave the oral statement at issue here, they told him they would arrest him if he did not give a taped statement. Detective McCarty testified that after he produced the tape recorder they gave Boyd Miranda warnings and he waived his rights. According to Detective McCarty, after waiving his rights, Boyd indicated to the detectives that he was only giving a taped statement because he knew they would arrest him if he did not. At that point, the detectives stopped the tape recorder and stopped questioning Boyd. Boyd did not give a taped statement and the detectives did not arrest him. With this in mind, our review essentially involves whether a reasonable person in Boyd's situation would have understood these circumstances as a custodial interrogation.
 {¶ 12} Boyd is a thirty-five year old male of normal intelligence. Boyd's experience involves his work as an auxiliary police officer who graduated from the Ohio Police Academy. Boyd even admitted that he received instruction on arrest, search and seizure while at the police academy. The detectives only interrogated Boyd once. In addition, this was the first interrogation of Boyd. It occurred in his own home and it lasted for an hour to an hour and a half. Boyd and Detective McCarty indicated the interrogation was of a conversational or professional nature and not coercive or intense. Moreover, Boyd does not allege, and the record does not reflect, any physical deprivation, mistreatment, threat or inducement. The only arguable threat is Boyd's perceived belief that he felt the detectives would arrest him if he did not cooperate and talk to them initially. However, Boyd's subjective belief is not controlling. See Stansbury, 511 U.S. at 323. Finally, the detectives did not place Boyd under arrest and did not restrict his movement in any way, even after his confession.
 {¶ 13} The totality of the circumstances, including the detectives' statement that "they had him [Boyd] on two counts of drug trafficking," would not lead a reasonable person to believe that he was in custody. The detectives did not deprive Boyd of his freedom in any significant way. Boyd allowed the officers to come into his home and freely moved about his home with the detectives there. For example, Boyd received and placed telephone calls and went to the bathroom without asking the detectives for permission. In addition, the detectives left Boyd in his home, unattended, while they went back and forth to their unmarked police car. The fact that an interrogation occurs in the suspect's home does not per se preclude it from being custodial in nature. However, something more extraordinary than the mere fact that the questioning was conducted by the police must occur before it takes on the coercive nature of the police station or an arrest. Therefore, the detectives were not required to give Boyd Miranda warnings before he gave his initial statement, and no right to counsel attached. See Arnold, supra. The state's assignment of error is sustained.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Kline, J. concur in Judgment and Opinion.
[1] Boyd stated that he told the detectives he wanted to talk to his attorney and called his attorney. Boyd's attorney did not answer the telephone and the detectives' questioning continued. Boyd does not argue the state did not allow him to call his attorney. However, he does argue the state should have suspended all questioning when he indicated that he wanted to talk to his attorney.
[2] Presumably, the trial court relied on State v. Barker (1978),53 Ohio St.2d 135, 372 N.E.2d 1324.
[3] If the state in fact "had" Boyd on videotape selling drugs to an undercover officer, we question the states' Crim.R. 12(K) certification. But since Boyd has not raised the issue, we overlook it in this instance.
[4] This discussion now appears in Katz, Ohio Arrest, Search and Seizure (2002), 492, T24.4.