Trent P. Pierce, M.D., Chairman Arkansas State Medical Board 2100 Riverfront Drive Little Rock, Arkansas 72202
Dear Dr. Trent:
I am writing in response to your request for an opinion on the advisability of the State Medical Board promulgating a regulation to govern physician conduct when entering into a collaborative agreement with an "advanced practice nurse." You have enclosed a fourteen-point recitation of what you believe to be the pertinent "facts and occurrences" relevant to a decision in this regard. It is sufficient to note at this juncture, however, that state law authorizes the licensure of "advanced practice nurses," who are regulated by the Arkansas State Nursing Board, and that such nurses may be granted the authority to prescribe Schedule III, IV, and V drugs under certain circumstances, one of which is that they enter into a "collaborative practice agreement" with a licensed physician. Your question arises because two previous regulations of the State Medical Board limiting the number of "registered nurse practitioners" (a different category of nurses), that physicians can employ or supervise, have been struck down in judicial decisions.
You phrase the pertinent part of your inquiry as follows:
Prior to going through the rule making procedure of setting forth guidelines for physicians who might wish to enter into a collaborating agreement with an Advanced Practice Nurse and having a court battle, in which said rule might get challenged or struck, the Arkansas State Medical Board would like an opinion from the Attorney General's Office as to whether said regulation would be advised without clear statutory authority specifically stating that the Arkansas State Medical Board should pass a regulation setting forth the conduct of a physician entering into a collaborative practice agreement.
* * *
The Board needs to know if the reasoning process and the rulings in Arkansas State Nurses Association v. Arkansas State Medical Board,283 Ark. 367, 677 S.W.3d 293 (1984) and Arkansas State Nurses Association v. Arkansas State Medical Board, Pulaski County Circuit Court Case No. 93-3210 preclude and/or prevent the Arkansas State Medical Board from promulgating Rules and Regulations to regulate physicians who engage in collaborative practice agreements.
RESPONSE
In my opinion the State Medical Board has authority to regulate in the general area of physician conduct relating to collaborative practice agreements to the extent that the regulations are necessary to carry out the purposes or intent of the Arkansas Medical Practices Act. The Board does not need express statutory authorization mentioning collaborative practice agreements before it adopts regulations governing a physician's conduct in that regard. The question of whether a particular regulation promulgated by the Board would be held invalid, however, can only be answered with regard to its specific content, and may not be determined in the abstract. In my opinion, the judicial decisions referenced above do not stand for the proposition that the State Medical Board is forbidden from all regulation on the topic. In short, the Board may regulate on this topic, but the validity of a particular regulation will depend upon whether it is drafted in conformity with constitutional and statutory mandates.
As you note, A.C.A. § 17-87-310, which is found in the statutory subchapter governing the licensure of nurses, governs the authority of "advanced practice nurses" to prescribe drugs. It provides as follows:
(a) The Arkansas State Board of Nursing may grant a certificate of prescriptive authority to an advanced practice nurse who:
(1) Submits proof of successful completion of a board-approved advanced pharmacology course that shall include preceptorial experience in the prescription of drugs, medicines, and therapeutic devices; and
(2) Has a collaborative practice agreement with a physician who is licensed under the Arkansas Medical Practices Act, §§ 17-95-201 —17-95-207, 17-95-301 — 17-95-305, and 17-95-401 — 17-95-411, and who has a practice comparable in scope, specialty, or expertise to that of the advanced practice nurse on file with the board.
(b)(1) An advanced practice nurse with a certificate of prescriptive authority may receive and prescribe drugs, medicines, or therapeutic devices appropriate to the advanced practice nurse's area of practice in accordance with rules established by the board.
(2) An advanced practice nurse's prescriptive authority shall only extend to drugs listed in Schedules III — V.
(c) A collaborative practice agreement shall include, but not be limited to, provisions addressing:
(1) The availability of the collaborating physician for consultation or referral, or both;
(2) Methods of management of the collaborative practice, which shall include protocols for prescriptive authority;
(3) Coverage of the health care needs of a patient in the emergency absence of the advanced practice nurse or physician; and
(4) Quality assurance.
(d) If a collaborative practice results in complaints of violations of the Arkansas Medical Practices Act, §§ 17-95-201 — 17-95-207, 17-95-301
— 17-95-305, and 17-95-401 — 17-95-411, the Arkansas State Medical Board may review the role of the physician in the collaborative practice to determine if the physician is unable to manage his or her responsibilities under the agreement without an adverse affect on the quality of care of the patient.
(e) If a collaborative practice results in complaints of violations of this chapter, the Arkansas State Board of Nursing may review the role of the advanced practice nurse in the collaborative practice to determine if the nurse is unable to manage his or her responsibilities under the agreement without an adverse affect on the quality of care of the patient.
(Emphasis added). Subsection (c) above governs the contents of collaborative practice agreements. These requirements are echoed and expanded upon in the Arkansas State Board of Nursing Rules. See Nursing Rules, Chapter 4, Section 8. Subsections (d) and (e) above commit to each respective regulatory board (the State Medical Board and the State Nursing Board), authority to "review the role" of its own individual licensees in connection with a collaborative practice. As you indicate, this statute does not expressly give the Arkansas State Medical Board the authority to promulgate rules and regulations in connection with "collaborative practice agreements," it mentions only the authority of the Medical Board to "review the role of the physician" with regard to "a collaborative practice." (Emphasis added).
The statute granting the Arkansas State Medical Board the general authority to promulgate rules and regulations is A.C.A § 17-95-303
(Supp. 2005). It provides in relevant part that:
The Arkansas State Medical Board shall:
(1) Make and adopt all rules, regulations, and bylaws not inconsistent with the laws of this state or of the United States and necessary or convenient to perform the duties and to transact the business required by law;
(2) Have authority to promulgate and put into effect such rules and regulations as are necessary to carry out the purposes of the Arkansas Medical Practices Act, §§ 17-95-201 et seq., 17-95-301 et seq., and17-95-401 et seq., and the intentions expressed therein;
These two subsections overlap to some extent. The grant of authority in subsection (1) above is more broadly worded, while the language of subsection (2) is more limited, authorizing only regulations necessary to carry out the purposes of the "Arkansas Medical Practices Act." The first subsection was adopted by virtue of Act 65 of 1955, an act which consolidated three previous boards regulating the medical profession. See Acts 1955, No. 65, § 2(H). The second subsection above was adopted later, by virtue of Act 198 of 1957. That act was "supplementary" toAct 65 of 1955 and the latter act stated that the two acts together were to be known as the "Medical Practices Act." Acts 1957, No. 198, § 1. The State Medical Board therefore has both broad authority under subsection (1) to adopt regulations "convenient" to "transact the business required by law," and more limited authority to adopt regulations "necessary" to carry out the purposes and intentions of the Medical Practices Act under subsection (2). As noted above, the statute governing "collaborative practice agreements" with advance practice nurses is not found in the Arkansas Medical Practices Act. It is found instead in the statutes governing nursing. As also noted above, the State Nursing Board has promulgated regulations addressing the contents and execution of collaborative practice agreements with advance practice nurses.
Your question as to the Board's authority in this regard arises primarily because of previous judicial rulings striking down two regulations of the Board regarding the relationship of physicians with "registered nurse practitioners," a category of nurse licensure separate from "advance practice nurses," the latter category having only been developed in 1995. Specifically, you mention Arkansas State Nurses Association v. Arkansas State Medical Board, 283 Ark. 367,677 S.W.2d 293 (1984). In that case, the Arkansas Supreme Court struck down "Regulation 10" of the State Medical Board, which required physicians to "file prescribed forms with the Medical Board setting forth [their] own professional qualifications and experience in addition to those of the R.N.P, describing how the R.N.P.'s services [were] to be utilized, and listing all other physicians to whom the R.N.P. [would] be responsible in the absence of the employing physician." Id. at 294-295. Importantly, Regulation 10 also restricted a physician from employing or assuming responsibility for, or directing the activities of more than two RPNs at any one time. A violation was declared to be "malpractice."
The Arkansas Supreme Court struck down the regulation, stating that "we find the regulation to be invalid insofar as it restricts the number of R.N.P.'s that may be employed by a physician or a group[1] of physicians and declares that a violation of the restriction is malpractice." Id. at 295. (Emphasis added). The word "insofar" is defined as meaning "to such an extent." Random House Webster's Unabridged Dictionary (2nd Ed. 2001) at 987. The court noted first that the legislature had not delegated to the Board the authority to independently define punishable malpractice, pointing to the then sixteen statutorily-listed instances of "unprofessional conduct" for which a physician's license might be revoked or suspended. See A.C.A. § 17-95-409. The court also found Regulation 10 "arbitrary on its face" stating that "if one doctor can adequately and effectively supervise two nurse practitioners, it is not reasonable to suppose that a group of ten doctors cannot supervise more than two equally well." Id. at 295. The court's decision striking down Regulation 10 appears limited to these two points. The court did not focus on the other provisions of the Regulation, which required the filing of certain forms with the Medical Board, or indicate that the Medical Board had no authority to regulate the conduct of physicians with regard to their interaction with registered nurse practitioners.
Two justices dissented from the decision (Hickman, J. and Special Justice Julian B. Fogleman). The latter Justice was troubled that the court decided issues not argued by the parties. He noted that the State Nursing Board had only argued that the Regulation was beyond the powers of the State Medical Board and was an invasion of the powers of the State Nursing Board to regulate nursing. Special Justice Fogleman noted that the Nursing Board had not argued that the Regulation was "arbitrary" or that the Board did not have authority to declare the conduct "malpractice," matters upon which the majority hinged the decision. On the issues actually raised by the parties, involving the potential clash of regulatory authority, Special Justice Fogleman stated:
It is agreed that the State Board of Nursing is the only agency given authority to adopt rules and regulations concerning licensing of Registered Nurse Practitioners and activities in which these nurse practitioners may engage subject, however, to the restrictions set forth in the terms of the act, but nothing in the act states that any and all regulations affecting these practitioners in some way, may only be adopted by the Board of Nursing.
* * *
The fact that Regulation 10 deals with the employment by licensed physicians of Registered Nurse Practitioners (whose licensing and permitted activities are subject to rules and regulations of a different State Board) and limits the number of those practitioners for whom a licensed physician may assume responsibility for collaboration or directing activities, does not make this a regulation of the collaborating or directed professional and certainly does not invade the authority of the Nursing Board to regulate and control their licensing or to specify the activities in which they may engage.
Id. at 298.
In response to your question about whether the "reasoning process" of this case "precludes and/or prevent[s] the Arkansas State Medical Board from promulgating rules" on this topic, in my opinion the court did not foreclose all regulatory authority of the State Medical Board over physician conduct in connection with the R.N.P.'s at issue in the case discussed above. It restricted the decision to two objectionable points in Regulation 10 — the two-R.P.N. limit and the declaration that a violation was "malpractice." In my opinion, therefore, this judicial decision does not necessarily preclude all Medical Board regulation of physician conduct relative to collaborative practice agreements with a different category of nurses, i.e., advance practice nurses.
The other judicial decision you mention is Arkansas State Nurses Association v. Arkansas State Medical Board, (Pulaski County Circuit Court, No. 93-3210). The circuit judge in this case struck down a later 1993 Medical Board regulation on the same topic as Regulation 10. The circuit judge concluded that the new "Regulation 15" was "with minor exceptions . . . a reconfiguration of Regulation 10 ruled invalid by the Arkansas Supreme Court in Arkansas State Nurses Association v. Arkansas State Medical Board. . . ." Regulation 15 also contained the two-R.N.P restriction and also stated that violation of its provisions constituted "malpractice." The circuit court, relying on the Supreme Court's earlier holding, stated that it did not have the authority to ignore or overrule decisions of that court. The court also concluded that Regulation 15 violated the equal protection clause, because it was unsupported by a "rationale basis" as evidenced by the Arkansas Supreme Court's determination that it was "arbitrary."[2] This ruling, because it analyzes a regulation so similar to Regulation 10 and because it relies so heavily on the Arkansas Supreme Court's prior decision, does not add appreciably to the Supreme Court's pre-existing precedent.
In my opinion, the judicial precedents you cite do not forbid all regulation on the topic of physician conduct relative to collaborative agreements with advance practice nurses. It is clear, however, that a new regulation similar to the ones previously struck down will likely not pass scrutiny. In my opinion, any regulation adopted by the State Medical Board would need to be tied to the purposes of the Medical Practices Act. That is the general boundary of the Board's authority to adopt rules and regulations. See A.C.A. § 17-95-303(1) and (2). In reviewing the validity of any such rule, the following precepts will apply:
In reviewing the validity of a rule or regulation, this court must give the regulation the same presumption of validity as it would a statute. McLane Co., Inc. v. Davis, 353 Ark. 539, 110 S.W.3d 251 (2003); Department of Human Servs. v. Berry, 297 Ark. 607, 764 S.W.2d 437
(1989). In reviewing the adoption of regulations by an agency under its informal rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Id. Specifically, it is well settled that "an agency has no right to promulgate a rule or regulation contrary to a statute[.]" McLane,353 Ark. at 546, 110 S.W.3d at 256. See also McLane Co., Inc. v. Weiss,332 Ark. 284, 965 S.W.2d 109 (1998); Pledger v. C.B. Form Co. 316 Ark. 22,871 S.W.2d 333 (1994).
Department of Human Services v. Howard, 367 Ark. 55, 62, ___ S.W.3d ___ (2006).
It has also been stated that "A court will not attempt to substitute its judgment for that of the administrative agency. [Citations omitted.] A rule is not invalid simply because it may work a hardship, create inconveniences, or because an evil intended to be regulated does not exist in a particular case." Arkansas Health Services Commission v. Regional Care Facilities, Inc., 351 Ark. 331, 338, 93 S.W.3d 672 (2002). At the same time, it has been stated that:
. . . an administrative agency cannot regulate the activities of another agency or promulgate administrative rules to bind another agency unless it has express statutory authority to make and enforce such a rule. "An administrative agency has only those powers as are expressly conferred upon it or which may be fairly implied from the statutes under which it operates, and as a consequence, it cannot promulgate any rule which is not expressly or impliedly authorized by the legislature." Brown County v. HSS Dep't, 103 Wis.2d 37, 48, 307 N.W.2d 247 (1981).
George v. Schwarz, 242 Wis.2d 450, 626 N.W.2d 57 (2001). (Emphasis added.) In addition, it has been stated that "Generally, an agency is not required to follow the rules promulgated by another agency." State v. Landrum, 137 Ohio App.3d 718, 739 N.E.2d 1159 (2000). See also, Wanatah Stone Co. v. Indian Employment Security Board,142 Ind. App. 590, 236 N.E.2d 514 (1968), citing 1 Am. Jur. 2d Administrative Law § 136 ("It has been held that there is no occasion to give one statutory creature jurisdiction over the activities of another statutory creature unless the law unmistakably so provides").
As a consequence, the State Medical Board may not regulate the activities of advance practice nurses, dictate the actions of the State Nursing Board, or adopt regulations contrary to the statute governing collaborative agreements. As discussed above, it may not adopt a regulation that contains provisions similar to the two aspects of former Regulations 10 and 15 that have been previously struck down by the courts. In my opinion, the Medical Board may regulate the conduct of physicians with regard to collaborative practice agreements to the extent the regulations attempt to ensure physician compliance with the Medical Practices Act. Cf., e.g., State Medical Board v. Grimmett,250 Ark. 1, 463 S.W.2d 662 (1971) (evidence of drug dispensing by physician's employee was sufficient to suspend physician's license under what is now A.C.A. § 17-95-409(a)(2)(C), which prohibits "aiding or abetting an unlicensed person to practice medicine"). The validity of any such regulation will depend upon its content.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The court apparently assumed that the two-R.N.P. limit also applied to a group of physicians. Id. at 297 (Fogleman, Special J., dissenting).
[2] Apparently the court found the regulation denied equal protection of the law to the class comprised of physicians who collaborate with, employ, supervise, or otherwise utilize RNPs. The plaintiff argued that this class was singled out for disparate treatment and subjected to burdensome and unnecessary requirements that were not placed on physicians who did not utilize registered nurse practitioners. There was no discussion by the court of whether these two classes were "similarly situated." See, e.g., Ghegan Ghegan, Inc. v. Barclay, 345 Ark. 514,521, 49 S.W.3d 652 (2001) (stating that "Only if there exists a discrimination between persons similarly situated is it necessary that a rational basis for such discrimination be established").