DECISION AND JUDGMENT ENTRY
{¶ 1} Adam K. Boysel moved to suppress evidence found in his residence after Boysel's live-in girlfriend gave consent for Boysel's probation officer and two Hocking County Sheriffs deputies to enter the house. The trial court overruled his motion, and Boysel entered a plea of no contest. On appeal, Boysel argues that the trial court should have suppressed this evidence because the officers had neither a warrant nor a reasonable suspicion that Boysel had violated the terms of his probation or that he had engaged in criminal activity. However, Boysel does not challenge the trial court's conclusion that Boysel's live-in girlfriend gave effective consent to law enforcement to enter the living room of the house before they found drugs and drug paraphernalia in *Page 2 
plain view. Because the officers had consent to enter the house and the contraband was in plain view, the probation officer and the deputies did not need to have a warrant or reasonable grounds to believe that Boysel had violated the terms of his probation before they entered his house and seized the evidence. Accordingly, we affirm the judgment below.
 I. Facts {¶ 2} The State charged Boysel with one count of possession of marijuana, a violation of R.C. 2925.11(A), one count of possession of drug paraphernalia, a violation of 2925.14(C)(1), and one count of possession of vicoden, a violation of R.C. 2925.11(A), after his probation officer and two Hocking County Sheriffs Deputies discovered marijuana, vicoden pills, and a "snorting device" during a home visit. Boysel moved to suppress this evidence on the grounds that it was obtained in violation of his Fourth Amendment rights against unreasonable searches and seizures.
 {¶ 3} At a hearing on this motion, the State presented the testimony of Deputy Kevin Groves, a detective with the Hocking County Sheriffs Office. Groves testified that, along with another deputy, he accompanied a probation officer from the Hocking County Municipal Court, Karli Grant, while she made home visits on probationers to check to see if they were still living at the address provided to the court. On arriving at the address listed in Boysel's file, Groves learned from the occupants of the house that Boysel had moved across the street with their daughter and his live-in girlfriend, Charlene Pinkstock. Groves testified that they crossed the street, knocked on the door, and announced who they were. However, no one answered. Soon after, Pinkstock arrived home, and they explained to her why they were there and asked permission to *Page 3 
enter the house. Groves testified that Pinkstock gave them permission to enter, noting that "[s]he actually yelled inside, told Adam to open up the door." Boysel opened the door and explained that "he didn't want to open the door if he was going to get arrested because he had a young child there and we explained to him we weren't there to arrest anybody, we were just doing house visits." However, when asked whether "either Ms. Pinkstock or Mr. Boysel [told] you it was all right to come on in their home[,]" Groves replied "I don't recall that." When asked whether "either one of them [told] you that it was not all right to come in there[,]" Groves replied "I don't believe they did, but I don't recall."
 {¶ 4} Groves explained that a home visit entailed confirming that the probationer still lived at the address in the file as well as "usually doing a walk through the residence, not a very intrusive search at no means [sic], but checking for any illegal activity." Upon entering the residence, Groves found the marijuana, the pills, and the snorting device on a bedside table beside a makeshift bed in the living room. Groves noted that these items were not concealed and that Boysel said that he owned them. Groves admitted that he had no suspicion of illegal drug activity related to Boysel or his residence, but he explained that the Sheriff's Office had initiated a "sweep" of probationers in response to recent drug activity and thefts in the area. However, Groves testified that he had had no reason to believe that Boysel was connected to any of this criminal activity.
 {¶ 5} Boysel testified on his own behalf. He explained that, after he opened the door, "they come rushing in the door and I asked Detective Groves, I said do you have a warrant to search my house. He said I don't need a warrant, it's a probation search." *Page 4 
Boysel denied giving permission to enter the house. However, he did not testify that he had refused to allow the probation officer or the deputies to enter.
 {¶ 6} The trial court concluded that the drugs and drug paraphernalia were not the product of an illegal search. Although it recognized that Boysel testified that he had not given permission to enter, the court found that Pinkstock lived in the house and had given her consent to enter. The court also concluded that the probation officer and the deputies had the right to walk through the house of a probationer, and it found that the contraband was in plain view. In the alternative, the court concluded that the probationer and the deputies had a reasonable suspicion that Boysel had violated the terms of his parole because Boysel had not updated his address, and they could rightfully walk through the house.
 {¶ 7} Boysel pleaded no contest to the charges. After the trial court entered his convictions, he filed this appeal.
 II. Assignment of Error {¶ 8} Boysel presents one assignment of error: "The trial court erred in overruling Defendant's motion to suppress on the grounds that the officer(s) was acting without a warrant, without a reasonable suspicion based upon articulable facts when he restrained the Defendant of his liberty and located certain illegal contraband in Defendant's home."
 III. Standard of Review {¶ 9} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; Matter ofSturm, Washington App. No. 05CA35, 2006-Ohio-7101, *Page 5 
at ¶ 27. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Brooks,75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030; Sturm at ¶ 27. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Landrum (2000),137 Ohio App.3d 718, 722, 739 N.E.2d 1159. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690, 699,116 S. Ct. 1657, 134 L.Ed.2d 911; Landrum, 137 Ohio App.3d at 722; State v.Monroe, Scioto App. No. 05CA3042, 2007-Ohio-1492, at ¶ 16.
 IV. Pinkstock's Consent to the Search {¶ 10} In his sole assignment of error, Boysel argues that the trial court erred in failing to suppress the items found during the walkthrough of his house because the law enforcement officers lacked a warrant or a reasonable suspicion that Boysel had violated the terms of his probation or had engaged in criminal activity. See United States v.Knights (2001), 534 U.S. 112, 122, 122 S. Ct. 587, 151 L.Ed.2d 497
("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). However, the State argues that we need not reach that question because Boysel's live-in girlfriend gave law enforcement officers effective consent to enter the house. *Page 6 
 {¶ 11} As we have previously recognized, "[n]o Fourth Amendment violation occurs when an individual voluntarily consents to a search."State v. Fry, Jackson App. No. 03CA26, 2004-Ohio-5747, at ¶ 18; see, also, United States v. Drayton (2002), 536 U.S. 194, 207,122 S. Ct. 2105, 153 L.Ed.2d 242 ("Police officers act in full accord with the law when they ask citizens for consent"); Schneckloth v. Bustamonte (1973),412 U.S. 218, 219, 93 S. Ct. 2041, 36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"). "Consent to a search is `a decision by a citizen not to assert Fourth Amendment rights.'" Fry at ¶ 18, quoting Katz, Ohio Arrest, Search and Seizure (2004 Ed.), Section 17:1, at 341. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." Georgia v. Randolph (2006),547 U.S. 103, 105, 126 S. Ct. 1515, 164 L.Ed.2d 208, citing Illinois v.Rodriguez (1990), 497 U.S. 177, 110 S. Ct. 2793, 111 L.Ed.2d 148, andUnited States v. Matlock (1974), 415 U.S. 164, 94 S. Ct. 988,39 L.Ed.2d 242. The trial court found that Pinkstock "gave Ms. Grant and the deputies permission to enter the home that she shared with [Boysel]. * * * Once they gained admission to the Boysel-Pinkstock home, Ms. Grant and the deputies observed the contraband in plain sight."
 {¶ 12} Boysel has not assigned as error or argued in his appellant's brief that the trial courted erred in finding that Pinkstock could and did validly consent to the search of his house, nor did he confront the issue in a reply brief after the State raised Pinkstock's consent as justifying the walkthrough in its appellee's brief. *Page 7 
 {¶ 13} Furthermore, had Boysel contested the issue, we cannot say that the trial court erred in finding that Pinkstock had joint possession of the house with Boysel, that Pinkstock gave permission to the probation officer and the deputies to enter the house, and that the drugs and drug paraphernalia were in plain view. Again, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. Sturm at ¶ 27; Landrum, 137 Ohio App.3d at 722.
 {¶ 14} Deputy Groves testified that he had learned from Pinkstock's parents that "[Boysel and Pinkstock] were now living across the street in the parents' old house." Thus, Grove could reasonably believe that Pinkstock shared authority over the house with Boysel and, therefore, could consent to a search. See Georgia v. Randolph, 547 U.S. at 105
(recognizing as "a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant"). Groves also testified that Pinkstock, while she was outside on the porch and the door was closed, gave permission to the probation officer and the deputies to enter the house. Groves explained that Pinkstock actually yelled inside and told Boysel to open the door. Thus, Pinkstock consented to law enforcement entering the house. SeeUnited States v. Matlock (1974), 415 U.S. 164, 171, 94 S. Ct. 988,39 L.Ed.2d 24 ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). *Page 8 
 {¶ 15} Finally, Boysel admitted on the stand that the drugs and drug paraphernalia were in "plain view." See Horton v. California (1990),496 U.S. 128, 136-37, 110 S. Ct. 2301, 110 L. Ed.2d 112 (holding that, under the plain-view doctrine, a law enforcement officer may lawfully seize an object in plain view without a warrant if the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed and the incriminating character of the item is "immediately apparent"). Thus, we believe that competent, credible evidence supports the trial court's factual finding that Pinkstock could and did consent to the probation officer and the deputies entering the house and that the contraband seized was in plain view.
 {¶ 16} We recognize that Boysel testified that, after he opened the door, he asked Groves whether he had a warrant. Furthermore, Boysel testified that he "did not give permission to any law enforcement officer to enter [his] home[.]" However, there is no testimony that Boysel expressly refused consent to a police search rather than merely acquiesced to it. Thus, the rule that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant[,]" does not apply in this case. See Randolph, 547 U.S. at 122-23.
 {¶ 17} Because Boysel's co-occupant of the house consented to the probation officer and the deputies entering the house, because he did not refuse to allow the law enforcement officers to enter, and because the drugs and drug paraphernalia were in plain view once they entered, there has been no Fourth Amendment violation. Therefore, we reject Boysel's argument that the drugs and drug paraphernalia were the
Hocking App. No. 08CA5 9
product of an unreasonable search and seizure in violation of the Fourth Amendment. According, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1