DECISION AND JUDGMENT ENTRY
{¶ 1} The Highland County Juvenile Court adjudicated Camry Lower to be a delinquent child for committing robbery. Lower appeals his adjudication of delinquency, arguing the juvenile court erred in admitting eyewitness's identification testimony because it resulted from a one person show-up, which he claims is an unduly suggestive and unreliable identification procedure. We agree the out-of-court identification procedure used by the police was unduly suggestive. However, it did not create a substantial likelihood of irreparable misidentification by the victim in this case because the victim was familiar with Lower and had enough time to observe him during the incident to make his subsequent identification reliable. Because it was reliable, the trial court did not err in admitting the victim's identification testimony. *Page 2 
 {¶ 2} Next Lower contends the adjudication is against the manifest weight of the evidence because the state failed to prove both the existence of a theft offense and the identity of the perpetrator. Lower claims the victim's testimony that he had at least $400 taken from him is not credible because the victim did not report the incident immediately, gave conflicting versions of the amount of money involved, and the eyewitness did not see any money being removed from the victim's pocket. Where the evidence is conflicting, we leave the determination of weight and credibility to the factfinder. The victim's testimony that he lost a significant amount of cash is some evidence that a theft occurred in spite of the fact he was unclear about the exact amount. Lower also contends the court should not have believed the victim's identification of Lower as the perpetrator because it was unreliable. Because we have already found the identification testimony was admissible, we leave the decision of what weight to afford it to the factfinder. Accordingly, we will not second guess the trial court in that regard.
 {¶ 3} In addition to appealing his delinquency adjudication, Lower appeals the court's disposition, contending that the court erred in ordering him to pay costs. He argues that the court should have conducted a hearing to determine if he was able to pay the costs. However, at the disposition, Lower failed to advise the court he was indigent. And because the record reflects that the court did schedule a subsequent hearing concerning the payment of costs, which he did not attend, Lower has waived this argument. Lower also argues that because he is indigent the court should have considered imposing a term of *Page 3 
community service instead of court costs. Because Lower failed to inform the court of his indigency, it did not err if it failed to consider community service.
 {¶ 4} Finally, Lower argues that he received ineffective assistance of counsel at both his adjudicatory hearing and dispositional hearing. His claim of ineffective assistance of counsel is premised upon the arguments raised in his first and third assignments of error. Because we determined the eyewitness identification was properly admitted, trial counsel did not render deficient performance by failing to object at the adjudicatory hearing to its admission. However, if Lower was indeed indigent and unable to pay the costs, his counsel should have raised that issue at the disposition. But since there is nothing in the record beyond his initial affidavit on this issue, Lower will have to pursue this contention by other means.
 {¶ 5} Having found no merit in any of the assigned errors, we affirm the juvenile court's adjudication and disposition.
 I. Facts {¶ 6} A delinquency complaint alleged that Lower had committed felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony if committed by an adult, and aggravated robbery in violation of R.C. 2911.01(A)(3), a first-degree felony if committed by an adult. The offenses allegedly occurred on or about April 3, 2006, one day before Lower turned 18 years old. Upon service of the complaint, Lower filed an affidavit of indigency and received appointed counsel. *Page 4 
 {¶ 7} At an adjudicatory hearing the victim gave the following version of events. On April 3, 2006, he was sitting on a couch watching television with his friend Julie Parker in her apartment when there was a knock on the door. After looking through a hole in the door to see who was there, Ms. Parker let two males into her apartment. The men entered the living room, approached the victim and demanded that he give them his wallet. When he refused, they hit and kicked him repeatedly as he sat upright on the couch and as he subsequently crouched on the floor. The victim testified that during the beating he felt a hand go into his pocket and pull out between $400 and $450 in cash that he had left from a paycheck he had recently cashed. He stated when Ms. Parker threatened to call the police, the two assailants ran out of her apartment. According to the victim, he suffered black eyes, a broken nose, cut lips, sore ribs, and bruises as a result of the beating.
 {¶ 8} The victim testified he did not know the names of his assailants at the time they assaulted him but he recognized their faces. However, when he reported the incident two days later, he was able to provide Lower's name to the police as one of the persons who assaulted and robbed him. Authorities arrested Lower that same day and placed him in jail, where the victim identified him as one of his assailants. At the adjudicatory hearing held in July 2006, the victim again identified Lower as one of his assailants.
 {¶ 9} At the conclusion of the adjudicatory hearing, the juvenile court found that that a robbery did in fact occur but the victim suffered only physical harm, rather than serious physical harm as needed to support the charge of *Page 5 
aggravated robbery. The court dismissed the felonious assault charge and adjudicated Lower a delinquent child for committing robbery in violation of R.C. 2911.02(A)(2) [inflicting physical harm on another during the commission of a theft offense], a second-degree felony if committed by an adult. The court delayed the dispositional hearing until the following day in order to allow defense counsel time to prepare for the hearing.
 {¶ 10} In its dispositional ruling, the court committed Lower to the custody of the Department of Youth Services for a minimum period of one year and a maximum period not to exceed his attainment of the age of 21 years. The court also ordered him to pay the court costs associated with the action "no later than August 19th". This appeal followed.
 II. Assignments of Error {¶ 11} Appellant presents four assignments of error for this court's review:
 ASSIGNMENT OF ERROR I:
 The trial court violated Camry Lower's right to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution, and Juv.R. 29(E)(4) when it adjudicated him delinquent of robbery on the basis of unduly suggestive and unreliable eyewitness identification.
 ASSIGNMENT OF ERROR II:
 Camry Lower's adjudication and commitment must be reversed and remanded for a new trial because his adjudication is against the manifest weight of the evidence. *Page 6 
 ASSIGNMENT OF ERROR III:
 The trial court erred when it failed to hold a hearing to determine whether Camry Lower was able to pay the sanction imposed by the juvenile court and when it failed to consider community service in lieu of the financial sanction in violation of R.C. 2152.50.
 ASSIGNMENT OF ERROR IV:
 Camry Lower was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution.
 III. Eyewitness Identification Evidence {¶ 12} In his first assignment of error, Lower contends the juvenile court erred in admitting the victim's eyewitness identification testimony into evidence. He asserts that the victim's identification of appellant at a "show-up" at the police station two days after the incident was so impermissibly suggestive that it created a substantial likelihood of irreparable misidentification. He also contends the show-up tainted the victim's subsequent in-court identification of appellant, making it unreliable.
 {¶ 13} The record indicates that Lower failed to file a motion under Juv.R. 22(D)(3) to suppress the identification testimony and failed to object to the testimony at trial. See Evid.R. 103(A)(1). Therefore, appellant has waived this assignment of error absent plain error by the trial court in admitting the evidence. See, In re Carter, Jackson App. No. 04CA15, 2004-Ohio-7285, ¶ 13; In re Sturm, Washington App. No. 05CA35, 2006-Ohio-7101, ¶ 53. Crim.R. 52 allows plain errors to be recognized, stating that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the *Page 7 
court." As defined by the Supreme Court of Ohio, plain error does not exist unless it is clear that but for the error, the jury's verdict would have been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58,62. Importantly, an appellate court should exercise the utmost caution when taking notice of plain error under Crim.R. 52(B), invoking the rule only in exceptional circumstances and only to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 14} Generally, identification testimony is admissible unless it results from an identification procedure that is so impermissibly suggestive so as to create a substantial likelihood of irreparable misidentification. Simmons v. United States (1968), 390 U.S. 377, 384,88 S.Ct. 967, 19 L.Ed.2d 1247. Moreover, the fact that the identification procedure contains notable flaws does not, per se, preclude admission of the subsequent in-court identification. State v.Moody, (1978), 55 Ohio St.2d 64, 67; State v. Merrill (1984),22 Ohio App.3d 119, 121. Rather, the focus then shifts to reliability. State v.Woolum (Aug. 19, 1992), Ross App. No. 1840, citing Simmons, supra, andState v. Barnett (1990), 67 Ohio App.3d 760, 768. As noted in Manson v.Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, " * * * reliability is the linchpin in determining the admissibility of identification testimony * * *." That is, even if the identification procedure was suggestive, the subsequent identification is admissible so long as it is reliable. Manson; State v. Moody (1978), 55 Ohio St.2d 64,67. The factors to consider in determining reliability include " * * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the *Page 8 
accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of the time between the crime and the confrontation." Neil v.Biggers (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 15} Courts have often been critical of the practice of showing suspects to persons singly, and not as part of a line-up. See, State v.Gross, 97 Ohio St.3d 121, 127, 2002-Ohio-5524; State v. Broom (1988),40 Ohio St.3d 277, 284. However, the use of a one person show-up is not per se improper. Indeed, the Ohio Supreme Court has stated: "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." State v.Madison (1980), 64 Ohio St.2d 322, 332, quoting Bates v.United States (D.C. Cir.1968), 405 F.2d 1104. The Court in Madison recognized that the crucial issue in the case of a one-on-one show-up is "whether, based on the totality of the circumstances, there is a very substantial likelihood of misidentification." Madison, citing Neil, supra. See, also, Gross, supra.
 {¶ 16} Given the totality of the circumstances in this case, we conclude that the one-man showup conducted by the police constituted an unduly suggestive identification procedure. This was not a case where a fleeing suspect was apprehended and returned to the scene for the victim's immediate identification of the perpetrator. Rather, the victim's one-on-one identification of Lower took place in a jail cell upon Lower's arrest two days after the incident. *Page 9 
There was no reason for the police not to have used a lineup or a photo array under these facts.
 {¶ 17} However, even if the out-of-court identification procedure was unduly suggestive, we are not convinced that the show-up procedure in the present case created a "very substantial likelihood of irreparable misidentification" such that the victim's identification of Lower was unreliable. See Simmons, supra. Contrary to Lower's contention, the evidence in this case indicates that the victim had an adequate opportunity to observe Lower during the assault, which took place over several minutes in a lighted room while the victim was sitting upright on a couch at approximately arms' length from his assailants for much of the time. Indeed, the victim testified that he "knew" Lower's face at the time of the assault. Although the victim did not learn Lower's name until after the incident, this fact did not render his identification unreliable in light of the victim's certainty in both his in-court and out-of-court identifications. And, because the victim was able to provide the police with Lower's name, there was simply no need for him to give a physical description of Lower to the police. Finally, the relatively short period of time between the incident and the initial identification, i.e., two days, adds to its reliability. Based on the evidence, we conclude that both instances of the victim's identification of Lower are reliable.
 {¶ 18} Given the totality of the circumstances, we are not convinced that the show-up procedure in this case presented a "very substantial likelihood of irreparable misidentification." Rather, we conclude admission of the victim's *Page 10 
identification testimony did not amount to error, let alone, plain error. Accordingly, the first assignment of error is overruled.
IV. Manifest Weight of the Evidence
 {¶ 19} In his second assignment of error, Lower contends that the juvenile court's adjudication of delinquency for robbery is against the manifest weight of the evidence. He argues there is no credible evidence to establish (1 ) the victim actually had money stolen from him and (2) Lower's identification as one of the persons who assaulted and robbed the victim.
 {¶ 20} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4). Here, the juvenile court adjudicated Lower delinquent for committing robbery in violation of R.C.2911.02(A)(2), inflicting physical harm on another during the commission of a theft offense.
 {¶ 21} In determining whether the adjudication of delinquency for robbery is against the manifest weight of the evidence, we apply the same standard of review applicable to criminal convictions. See, In reWatson (1989), 47 Ohio St.3d 86, 91. Our function when reviewing the weight of the evidence is to determine whether the greater amount of the credible evidence supports the verdict. State v. Thompkins,78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest *Page 11 
miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy (1998), 84 Ohio St.3d 180, 193-194.
 {¶ 22} Lower argues the victim's inconsistent testimony regarding the amount of money stolen, combined with the victim's failure to report the crime immediately, indicates the victim's testimony was not credible enough to establish the element of theft. During cross examination, the victim admitted he was not sure of the exact amount of money that was stolen. He explained that he had given three different figures, two to the police and one on direct examination because he was unsure how much of his $565 paycheck he had left at home and how much he spent before being robbed. The victim testified that between $400 and $450, and possibly close to $500, was taken from his pocket during the robbery. However, certainty as to the value of the property taken is not necessary to establish theft. See R.C. 2913.02(A); State v.Bradford, Greene App. No. 2002 CA 125, 2004-Ohio-769. The fact that the victim could not pinpoint the exact amount of money involved does not preclude the fact finder from concluding the thief stole a significant amount of cash. We leave this weight or credibility determination to the court or jury. *Page 12 
 {¶ 23} Lower also argues that the victim's testimony that a theft occurred is contradicted by Julie Parker, who was the only other eyewitness to the robbery. Ms. Parker, who did not testify at trial, submitted a statement to the police that was admitted into evidence at trial. In the statement she indicated she did not see a billfold or money taken from the victim during the incident. The victim explained, however, that he does not carry a billfold and was not carrying one on the day in question.
 {¶ 24} More importantly, the weight to be given evidence, and the credibility to be afforded the victim's testimony, are issues to be determined by the trier of fact. State v. Dye (1998), 82 Ohio St.3d 323,329; State v. Frazier (1995), 73 Ohio St.3d 323, 339. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 25} As the trier of fact, the juvenile court could properly conclude that just because Ms. Parker did not see Lower remove the money from the victim's pocket, does not mean that the theft did not in fact happen. There is no requirement that an eyewitness observe every element of the offense where the state can prove the existence of all the elements by other testimony or evidence. We will not second guess the juvenile court on the matter of the victim's credibility regarding either the amount of money stolen from him or the fact that a theft actually occurred. The victim's testimony provided enough evidence to establish the element of theft. See, State v. Lockhart (1996), *Page 13 115 Ohio App.3d 370 (victim's testimony sufficient to prove the value of stolen property). Thus, the court's finding that a theft occurred was not against the manifest weight of the evidence.
 {¶ 26} Lower next asserts that the juvenile court's finding that he was one of the perpetrators is against the manifest weight of the evidence. Lower contends that the court's finding is based on eyewitness identification testimony presented by the victim, who was neither reliable nor credible and who identified Lower only as the result of the unduly suggestive identification procedure. As we concluded in the first assignment of error, however, both instances of the victim's testimony identifying Lower as one of the assailants were reliable, and thus admissible. Accordingly, the trial court was free to assess it whatever weight and credibility it chose.
 {¶ 27} Lower also argues the fact that the victim did not seek medical treatment for his injuries indicates he was not injured as he claimed. Regardless of whether this contention is an attack on the victim's general credibility or the existence of an assault, the court was again free to believe the victim. Moreover, the victim explained that he did not seek medical treatment because he did not have medical insurance or money to obtain treatment. Patrolman Hillger, who observed the victim when he reported the incident to the police, corroborated the victim's testimony that he suffered a swollen nose, black eyes, and small cuts on his nose.
 {¶ 28} Because substantial, credible identification testimony supports the juvenile court's finding that Lower was one of the persons who inflicted physical *Page 14 
harm on the victim during the commission of a theft offense, the court's finding is not against the great weight of the evidence.
 {¶ 29} This is not a case in which the evidence weighs heavily against Lower's adjudication. We cannot say that the juvenile court clearly lost its way and created a manifest miscarriage of justice when it adjudicated Lower delinquent for committing robbery. Accordingly, we overrule the second assignment of error.
V. Imposition of Financial Sanctions
 {¶ 30} In his third assignment of error, Lower contends that the juvenile court erred in imposing court costs as part of his disposition. He argues the court should have held a hearing to determine if he was able to pay the court costs. Additionally, he argues that because he is indigent, the court should have considered imposing a term of community service instead of costs.
 {¶ 31} Under R.C. 2152.20(A)(2), a juvenile court may impose financial sanctions upon a child who has been adjudicated delinquent. R.C.2152.20(C) provides that "[t]he court may hold a hearing if necessary to determine whether a child is able to pay a sanction[.]" [Emphasis added.] Lower maintains that the trial court violated R.C. 2152.20(C) by failing to hold a hearing in order to determine whether he was able to pay sanctions. However, the plain language of R.C. 2152.20(C) does not require the juvenile court to hold such a hearing in the absence of a claim by the juvenile that he is indigent. See, In re Carter, Jackson App. No. 04CA15, 2004-Ohio-7285, ¶ 32 (where juvenile fails to advise *Page 15 
the court at the disposition that he is indigent, the court does not abuse its discretion in failing to conduct a hearing).
 {¶ 32} In any event, the record indicates that the juvenile court scheduled a subsequent hearing to address the payment of the court costs. Specifically, at the dispositional hearing, the court expressly advised Lower and his mother, who was at the hearing, that "court costs will be due no later than August 19th" but that "if you're not able to come up with the money to pay the costs, just be back here that Saturday morning [of August 19th] and we'll extend time, give you more time to pay them." No one raised the issue of indigency at that point. Moreover, the record indicates that the matter was set for a hearing on August 19, 2006, and was then rescheduled to September 19, 2006. Nothing in the record indicates anyone appeared before the juvenile court at any time, including the scheduled hearing dates, requesting that the costs be waived due to inability to pay. Lower cannot now complain that the court did not hold the hearing.
 {¶ ??} Because no one raised the indigency issue, the court did not err by imposing financial sanctions rather than community service. R.C.2152.20(D) provides that "[i]f a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service * * * in lieu of imposing a financial sanction[.]"
 {¶ 34} Here, although given an opportunity, Lower failed to appraise the juvenile court that he was financially unable to pay the court costs. Had he done so, the court could have considered a term of community service instead. Under *Page 16 
the circumstances, we cannot conclude that the court erred by imposing court costs rather than community service.
 {¶ 35} Accordingly, we overrule Lower's third assignment of error. VI. Ineffective Assistance of Counsel
 {¶ 36} In his final assignment of error, Lower asserts that he was denied the effective assistance of trial counsel at the adjudicatory and dispositional hearings.
 {¶ 37} An accused juvenile has a constitutional right to counsel, and the same rights to effective assistance of counsel as an adult criminal defendant. In re Gault (1967), 387 U.S. 1, 41, 87 S.Ct. 1428,18 L.Ed.2d 527. Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.State v. Smith (2000), 89 Ohio St.3d 323, 327, citing Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136, 142. Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. See,Bradley. Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. State v. White
(1998), 82 Ohio St.3d 16, 23. If one component of the test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland; Bradley. *Page 17 
 {¶ 38} Lower's claim of ineffective assistance of counsel is premised upon the arguments raised in his first and third assignments of error. Specifically, Lower first maintains that his counsel was ineffective for failing to object to the victim's eyewitness identification testimony. As we concluded in our analysis of the first assignment of error, the eyewitness identification testimony was not unreliable and the juvenile court did not err in admitting it. Therefore, trial counsel did not render deficient performance by failing to object to admission of the evidence.
 {¶ 39} Next, Lower argues that his trial counsel was ineffective for failing to object to the juvenile court's imposition of court costs without the court holding an ability-to-pay hearing and considering community service in lieu of the court costs. If Lower was indeed indigent for purposes of paying court costs, his counsel should have raised that issue at the dispositional hearing or the subsequently scheduled hearings. However, because the record before us contains no evidence of Lower's indigency, beyond the affidavit he filed for purposes of obtaining counsel, we cannot address this issue here. Lower must pursue whatever remedy he has based upon evidence outside the record in a different proceeding.
 {¶ 40} Having overruled each of Lower's assignments of error, we affirm the juvenile court's judgment of adjudication and disposition in this case.
 JUDGMENT AFFIRMED *Page 18 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, J. Kline, J.: Concur in Judgment and Opinion. *Page 1