[Cite as *State v. Thompson*, 2013-Ohio-2235.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 12CA688 |
| v. | : | |
| | | DECISION AND |
| RUSSELL P. THOMPSON, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 05/23/2013 |

APPEARANCES:

Benjamin E. Fickel, Logan, Ohio, for Defendant-Appellant.

Trecia Kimes-Brown, Vinton County Prosecuting Attorney, McArthur, Ohio, for Plaintiff-Appellee.

Hoover, J.

{¶ 1} Appellant, Russell P. Thompson, appeals his conviction and sentence in the Vinton County Common Pleas Court for aggravated robbery with a firearm specification. Appellant contends that the trial court erred when it denied his motion to suppress a pretrial identification. The victim of the robbery identified appellant as the perpetrator when a sheriff's deputy showed her a photograph of him on the deputy's mobile telephone. No other photographs of potential suspects were shown to the victim. This out-of-court identification procedure was not so flawed as to create a very substantial likelihood of irreparable misidentification by the victim in this case. The victim identified appellant within approximately two hours of the robbery and expressed no doubt about the identification. The victim's pre-identification description of appellant and of the get-away vehicle indicates that she had adequate opportunity to view him

during the crime and was not inattentive during the incident.  Moreover, the description, while not perfect, closely matched appellant's appearance when he was located within an hour of the robbery in a neighboring town.  Therefore, the pretrial identification was reliable; and the trial court did not err when it overruled the motion to suppress.

{¶ 2}  Next, appellant contends that the trial court erred by not instructing the jury in accordance with R.C. 2933.83(C)(3).  Appellant, however, did not meet his initial burden of putting forth evidence of noncompliance with the requirements of R.C. 2933.83.  As such, the trial court was not required to give the jury instruction and did not commit reversible error by failing to do so.  The judgment of the trial court is affirmed.

I

FACTS

{¶ 3}  On March 4, 2011, a man wielding a handgun robbed the Gas and Stuff store in Hamden, Vinton County, Ohio.  On that particular day, the store's owner, Nancy Jolly, was working the cash register.

{¶ 4}  The record reveals that around noon the man entered the store and within a few seconds placed a Cadbury Easter Egg on the counter.  As Ms. Jolly was ringing up the transaction, the man pulled a gun out of his jacket and threatened to shoot if he was not given money.  Ms. Jolly refused to hand over any money; and Ms. Jolly and the man scuffled for the cash register.  During the scuffle, the cash register opened and fell to the floor.  The man picked up what money he could and proceeded to exit the store.  Ms. Jolly chased the man outside where he again threatened to shoot her if she did not go back inside.  Ms. Jolly then reentered the store and immediately exited out a back door, where she watched the man drive away in a green Ford

Taurus. The vehicle did not have a license plate on the rear bumper. While all of this was taking place, another store employee called 911 and reported the robbery.

{¶ 5} An initial description of the vehicle and perpetrator was transmitted to the dispatcher at the Vinton County Sheriff's Department within minutes of the incident. Approximately an hour later, appellant was stopped and detained by the Wellston Police Department in Jackson County, Ohio, on the suspicion that he was the perpetrator of the robbery. The Wellston Police Department detained appellant until the Vinton County Sheriff's Department arrived at the scene. Upon arrival, Sheriff Shawn Justice[1] took approximately six photographs with his mobile telephone. Three of the pictures depicted the vehicle; two of the pictures depicted appellant; and one picture depicted cash that was strewn across the front seat of appellant's vehicle.

{¶ 6} Sheriff Justice then returned to Gas and Stuff, around 2:00 p.m., to speak with Ms. Jolly. At that time he asked Ms. Jolly to describe the perpetrator and the vehicle. Sheriff Justice then presented, on his mobile telephone, one of the photographs of appellant. Ms. Jolly believed that appellant was definitely the man who had robbed the store.

II

STATEMENT OF THE CASE

{¶ 7} Appellant was indicted by the Vinton County Grand Jury for one count of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145; one count of Theft, in violation of R.C. 2913.02(A)(4); and one count of Aggravated Menacing, in violation of R.C. 2903.21(A).

---

[1] At the time of the incident in March 2011, Sheriff Justice carried the title "Chief Deputy."

{¶ 8} Appellant subsequently filed a series of pretrial motions, which included a motion to suppress the pretrial identification by Ms. Jolly. The trial court held an oral hearing on appellant's motions. At the hearing, appellant, by and through trial counsel, voluntarily dismissed all but the motion to suppress the pretrial identification. After hearing the testimony of Ms. Jolly and Sheriff Justice, the trial court denied appellant's motion to suppress. The trial court reasoned that the pretrial identification was reasonable and not unduly suggestive given the circumstances of the case.

{¶ 9} The case proceeded to trial on March 22, 2012. The jury returned a guilty verdict on the aggravated robbery and the firearm specification charge. Due to the conviction on the felony charges, the trial court dismissed counts two and three of the indictment. Appellant was sentenced to seven years imprisonment on the aggravated robbery conviction and three years imprisonment on the firearm specification. The prison terms were ordered to be served consecutively. Appellant timely filed his appeal.

{¶ 10} Appellant raises two assignments of error for review.

First Assignment of Error:

> THE TRIAL COURT ERRED BY FAILING TO SUPPRESS UNDULY
> SUGGESTIVE AND UNRELIABLE IDENTIFYING STATEMENTS MADE
> BY THE VICTIM-WITNESS AND LAW ENFORCEMENT PERSONNEL
> VIOLATING APPELLANTS RIGHTS UNDER THE SIXTH AND
> FOURTEENTH AMENDMENTS TO THE UNITED STATES
> CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO
> CONSTITUTION.

Second Assignment of Error:

> THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY
> THAT IT MAY CONSIDER CREDIBLE EVIDENCE OF NONCOMPLIANCE

WITH R.C. 2933.83 IN DETERMING THE RELIABILITY OF ANY
EYEWITNESS IDENTIFICATION.

III

LAW & ANALYSIS

*A.      Motion to Suppress*

{¶ 11}  In his first assignment of error, appellant contends that the trial court should have

suppressed Ms. Jolly's pretrial identification testimony.  In essence, he asserts that when Sheriff

Justice showed Ms. Jolly the photograph of appellant, any identification that Ms. Jolly made

thereafter was tainted.  Appellant contends that the circumstances of showing Ms. Jolly the

photograph was so unduly suggestive that it created a substantial likelihood of irreparable

misidentification.  Appellant also contends that the photographic identification tainted Ms.

Jolly's subsequent in-court identification of him, making it unreliable.

{¶ 12}  Our review of a trial court's decision on a motion to suppress presents a mixed question

of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

When considering a motion to suppress, the trial court acts as the trier of fact and is in the best

position to resolve factual questions and evaluate witness credibility.  *Id.*  Accordingly, we defer

to the trial court's findings of fact if they are supported by competent, credible evidence.  *State v.*

*Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000).  Accepting those facts

as true, we must independently determine whether the trial court reached the correct legal

conclusion in analyzing the facts of the case.  *Burnside* at ¶ 8.

{¶ 13}  " 'When a witness has been confronted with a suspect before trial, due process requires a

court to suppress her identification of the suspect if the confrontation was unnecessarily

suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.' " *State v. Garvin*, 197 Ohio App.3d 453, 2011-Ohio-6617, 967 N.E.2d 1277, ¶ 22 (4th Dist.), quoting *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992). Under this two-prong test, the first question is whether the identification procedure was unnecessarily suggestive. "A defendant has 'the burden of going forward and the burden of persuasion' to establish, by a preponderance of the evidence, that a pretrial identification procedure was unnecessarily suggestive." *Id*. at ¶ 23, quoting *State v. Greene*, 4th Dist. No. 1211, 1979 WL 206802, *4 (Apr. 12, 1979). "Suggestiveness depends upon a variety of factors, such as the size of the array, its manner of presentation, and its contents." *State v. Cook*, 10th Dist. Nos. 09AP-316 & 09AP-317, 2010-Ohio-2726, ¶ 39. If the defendant does not prove that the procedure was unnecessarily suggestive, our inquiry ends. *Garvin* at ¶ 23; *see also State v. Conley*, 4th Dist. No. 08CA784, 2009-Ohio-1848, ¶ 9 ("Generally, as long as pretrial identification procedures are not unduly suggestive, issues concerning the reliability of that identification [go] to the weight of the evidence, not its admissibility.").

{¶ 14} However, if the pretrial identification procedure is deemed unnecessarily suggestive, the next question becomes whether the identification was unreliable under the totality of the circumstances, i.e., whether the suggestive procedure created a " 'very substantial likelihood of irreparable misidentification.' " *Garvin* at ¶ 25, quoting *Waddy* at 439. The defendant also has the burden of proof on this issue. *Cook* at ¶ 37. The factors to consider in determining reliability include: " ' * * * (1) the witness's opportunity to view * * * the defendant during the crime, (2) the witness's degree of attention,  (3) the accuracy of the witness's prior description of the suspect, (4) the witness's certainty, and (5) the time elapsed between the crime and the identification.' " *Garvin* at ¶ 25, quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39,

884 N.E.2d 92, ¶ 24 (4th Dist.); *see also Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 15}  It is true that "[c]ourts have often been critical of the practice of showing suspects to persons singly," and not as part of a line-up or photo array.  *In re Lower*, 4th Dist. No. 06CA31, 2007-Ohio-1735, ¶ 15, citing *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 24, and *State v. Broom*, 40 Ohio St.3d 277, 284, 533 N.E.2d 682 (1988).  However, showing a single suspect is not per se improper.  *Id.*  "There is no prohibition against a viewing of a suspect alone * * * when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."  *Id.*, quoting *State v. Madison*, 64 Ohio St.2d 322, 332, 415 N.E.2d 272 (1980), in turn quoting *Bates v. United States*, 405 F.2d 1104, 1106 (D.C.Cir.1968).

{¶ 16}  Appellant contends that the identification procedure was unnecessarily suggestive because Sheriff Justice only showed Ms. Jolly one photograph, rather than conducting a lineup or photo array.  Appellant argues that he was in custody and cooperative, and that there was nothing preventing the sheriff's department from conducting a more traditional lineup.  However, the identification procedure did not create a very substantial likelihood of irreparable misidentification such that the identification of appellant was unreliable.

{¶ 17}  Contrary to appellant's contention, the evidence in this case indicates that Ms. Jolly had an adequate opportunity to observe appellant during the robbery.  The robbery occurred during the day and in a lighted room.  Ms. Jolly and appellant were face to face for a significant portion of the incident.  Indeed, Ms. Jolly and appellant had engaged in a physical struggle over the cash register; and Ms. Jolly chased appellant into the parking lot where they had another encounter.

This was when appellant threatened to shoot Ms. Jolly for a second time. Moreover, Ms. Jolly was not inattentive. Rather, she had the presence of mind to try to locate appellant's vehicle and check for license plates and other details. Ms. Jolly also gave a fairly detailed description of the perpetrator and his vehicle. While appellant suggests that it is unclear whether Ms. Jolly or the other store employee gave the initial description, it is undisputed that Sheriff Justice asked Ms. Jolly for a description of the perpetrator prior to showing the photograph; and Ms. Jolly's description was substantially similar to the initial description given to dispatch.

{¶ 18} As for the actual description, some minor inconsistencies exist. For instance, Ms. Jolly stated that the perpetrator wore a camouflage jacket during the robbery. When appellant was stopped, however, he was not wearing camouflage. Ms. Jolly also described the perpetrator as having a goatee; yet, other witnesses testified that appellant's facial hair resembled a beard, rather than a goatee. Nonetheless, Ms. Jolly's description was accurate as to weight, height, facial structure, and general appearance. Moreover, Ms. Jolly described the suspect as wearing large, dark sunglasses that wrapped around and covered the side of his face. A similar pair of sunglasses was found on appellant's person when he was stopped by the Wellston police officer. It is not reasonable to expect, especially given the circumstances of the case, that the description be perfect. The description and appellant's appearance were similar enough to bolster the reliability of the identification.

{¶ 19} Ms. Jolly expressed no doubts when identifying appellant as the perpetrator. This fact shows the reliability of the identification. Ms. Jolly was confident in her identification of the appellant as the perpetrator of the robbery when she viewed the photograph. Finally, Ms. Jolly verified the identification almost exactly two hours from the actual robbery. Ms. Jolly's recollection was fresh at this point. This Court has previously stated that identifications

occurring within an hour or two of the crime lend credence to their accuracy. *State v. Mount*, 4th Dist. No. 11CA3297, 2012-Ohio-4119, ¶ 10.

{¶ 20} Given these facts, we conclude that no substantial likelihood of irreparable misidentification existed when considering the totality of the circumstances. Because the identification was not unreliable, the trial court properly denied the motion to suppress. Accordingly, we overrule appellant's first assignment of error.

B.      *Failure to Give Jury Instruction*

{¶ 21} Appellant contends, in his second assignment of error, that because the identification procedure did not comply with the requirements set forth in R.C. 2933.83(B), then in accordance with R.C. 2933.83(C)(3), the trial court should have instructed the jury that it could consider the noncompliance in evaluating the reliability of Ms. Jolly's identification.

{¶ 22} R.C. 2933.83 took effect in July 2010. The statute requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt minimum procedures for conducting the lineups. R.C. 2933.83(B). These procedures include, for example, using a "blind or blinded administrator" to conduct a photo lineup or live lineup, "[u]nless impracticable." R.C. 2933.83(B)(1). When evidence of a failure to comply with R.C. 2933.83 "is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(3).

{¶ 23} It does not appear that the identification followed the mandates of subdivision (B), and the trial court did not give a jury instruction on the requirements of the statute or the significance of noncompliance with those requirements. However, because appellant failed to object to the

omission at trial, he has waived all but plain error. *State v. Bradford*, 4th Dist. No. 11CA928, 2013-Ohio-480, ¶ 19. "[U]nder the plain error analysis * * * and, in order to warrant a reversal of the convictions, [a party] must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶ 24} The statute mandates a jury instruction on noncompliance only when evidence of a failure to comply is presented at trial. R.C. 2933.83(C)(3); *see also State v. Henry*, 6th Dist. No. L-11-1157, 2012-Ohio-5552, ¶ 46 ("[o]nly if such evidence is introduced at trial does the statute require a jury instruction."). Appellant contends that evidence of a failure to comply with the provisions of R.C. 2933.83 was presented at trial.[2] Specifically, appellant points to the cross-examination of Sheriff Justice, in which Sheriff Justice was asked about possible alternative methods in which the identification could have been conducted. [Trial Tr. at 118-121.] The cited testimony never discusses the requirements under R.C. 2933.83, or the sheriff department's purported noncompliance with such requirements. Neither does the testimony discuss any minimum requirements or procedures that the sheriff's department has adopted in conducting pretrial identifications. Without any evidence before the jury demonstrating noncompliance, the trial court was not required to give an instruction. Moreover, the jury was given the general credibility instruction and sufficient testimony regarding the identification was heard, allowing the jury to properly assess the value of Ms. Jolly's testimony. Accordingly, absent any indication that evidence was offered at trial demonstrating noncompliance with the statute, we cannot find plain error. Appellant's second assignment of error is overruled.

---

[2] Appellant also asserts that evidence of noncompliance was presented at the suppression hearing. Nonetheless, a pretrial suppression hearing should not be considered in determining whether evidence of noncompliance was presented "at trial."

IV

CONCLUSION

{¶ 25} Having overruled both of appellant's assignments of error for the reasons set forth above, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

Harsha, J., concurring in judgment only as to assignment of error II:

{¶ 26} As the principle opinion notes in ¶ 16, law enforcement "only showed Ms. Jolly one photograph, rather than conducting a lineup or photo array." R.C. 2933.83 applies to entities that are conducting live lineups and/or photo lineups. The term "photo lineup" is defined at R.C. 2933.83(A)(8) to be "an identification procedure in which an array of photographs * * * is displayed to an eyewitness * * *." It has no application to a photo show-up of a single picture to an eyewitness. The propriety of that procedure is controlled by the analysis conducted in the first assignment of error rather than R.C. 2933.83. Because R.C. 2933.83 does not apply, the requested jury instruction was not necessary. So, I concur in judgment only.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed. The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty (60) days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty (60) day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty (60) days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J.: Concurs in Judgment and Opinion.
Harsha, J.:       Concurs in Judgment and Opinion as to Assignment of Error I.
                  Concurs in Judgment Only with Opinion as to Assignment of Error II.

For the Court

By:_____
          Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.