[Cite as *State v. Phillips*, 2011-Ohio-6773.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA11 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| DARRELL PHILLIPS, JR. | : | |
| | : | **RELEASED 12/19/11** |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Conrad A. Curren, Greenfield, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.
_____

Harsha, P.J.

{¶1}   After pleading no contest to gross sexual imposition, Darrell Phillips appeals the trial court's denial of his motion to suppress.  Phillips contends that his statements to children services employees must be suppressed because the employees were agents of law enforcement and improperly interrogated him after he invoked his Fifth Amendment rights.  However, the employees fulfilled their statutory duty when they questioned Phillips and were not acting at the direction, control, or behest of law enforcement.  Therefore, they were not agents of law enforcement and not bound to follow the dictates of *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 when they questioned Phillips.  Because the interview by children services employees did not violate Phillips' constitutional rights, the trial court properly denied the motion to suppress, and we affirm the judgment below

I.  Facts

{¶2}   A grand jury indicted Phillips on one count of gross sexual imposition in

violation of R.C. 2907.05(A)(4), a third-degree felony.  Phillips filed a motion to suppress statements he made to Highland County Children Services employees.  Phillips claimed they were agents of law enforcement and elicited incriminating statements from him in violation of his Fifth Amendment rights.

{¶3}    At the hearing on the motion, Sergeant Dustin Malone of the Lynchburg Police Department testified that on September 8, 2010 he was dispatched to investigate allegations regarding sexual abuse.  A girl told him that Phillips, her stepfather, touched her private areas since she was six or seven years old until she was nine.  The child's grandmother told Malone that Phillips had an outstanding warrant.  Malone confirmed this information and arrested Phillips.  Malone then *Mirandized* Phillips and questioned him about the child's allegations.  Phillips denied the allegations and "decided that he wanted an attorney and did not want to talk" to Malone anymore.  Malone stopped the interrogation, completed a report, and turned it over to Detective Sergeant Denny Kirk.  Malone never spoke to anyone from children services about the case until the day of the motion hearing.

{¶4}    Breanne Perry, a children services employee, testified that on September 9, 2010 her agency received an allegation involving Phillips.  Perry could not reveal who the allegation came from because the information was confidential under the Revised Code.  She did acknowledge that the agency received a fax from Kirk on September 10 that contained a copy of Malone's incident/offense report and interview notes.  Perry thought she talked to Kirk briefly after receiving the fax but before interviewing Phillips.  According to Perry, law enforcement did not tell the agency to interview Phillips or encourage it to do so.  However, because Perry was "mandated in [her] job to speak with all parties involved[,]" she and her supervisor, Jeff Rulon, interviewed him on

September 28, and he confessed to the sexual abuse.  Perry testified that they did not *Mirandize* Phillips or record the conversation.  Perry acknowledged that she reported the confession to law enforcement.  She testified that she regularly contacts law enforcement about cases, particularly if they involve criminal matters like child sexual abuse.

{¶5}    Jeff Rulon, an investigative supervisor for children services, testified that the agency received an allegation that Phillips had sexually touched a child.  He testified that he did not interview Phillips at the direction of anyone other than children services.  Rulon testified that he was required by law to investigate the allegation.  When he and Perry questioned Phillips in an interview room at the jail, no one else was present.  Rulon testified that the agency is required by law to give law enforcement information that has a "criminal element to it * * *."

{¶6}    After a hearing on the motion, the trial court made findings of fact and concluded that Perry and Rulon were not law enforcement officers or agents of law enforcement.  The court found that they were "acting on their own duties to investigate child abuse reports made to them[,]" and there was "no evidence that [they] were acting as agents of the Sheriff's Department in conducting their interview."  Therefore, the court found that Perry and Rulon did not obtain the confession from Phillips in violation of his constitutional rights and denied the motion to suppress.  Phillips pleaded no contest to the charge, and the court found him guilty and sentenced him.  This appeal followed.

## II.  Assignment of Error

{¶7}    Phillips assigns one error for our review:

THE TRIAL COURT ERRED TO THE DETRIMENT OF THE
DEFENDANT BY NOT SUPPRESSING STATEMENTS MADE TO

CHILDREN'S SERVICES INVESTIGATORS WHEN THEY QUESTIONED HIM AFTER HE INVOKED HIS FIFTH AMENDMENT RIGHTS.

### III.  Motion to Suppress

### A.  Standard of Review

{¶8}    In his sole assignment of error, Phillips contends that the trial court erred by denying his motion to suppress the statements he made to children services employees.  Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8.  When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility.  Id.  Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Landrum* (2000), 137 Ohio App.3d 718, 722, 739 N.E.2d 1159.  Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case.  *Roberts* at ¶100, citing *Burnside* at ¶8.

### B. Statements to Children Services Employees

{¶9}    Phillips contends that the trial court erred by denying the motion to suppress because Perry and Rulon were agents of law enforcement and improperly interrogated him after he invoked his Fifth Amendment rights.  In *Miranda*, supra, at 444 the United States Supreme Court held that statements made during custodial interrogation, i.e. "questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," are admissible only upon a showing that law enforcement officials followed certain procedural safeguards to secure the accused's Fifth Amendment privilege against self-

incrimination.  (Emphasis added).  In crafting this rule, the Court focused on the compulsion inherent in such interrogation by law enforcement, explaining that "[a]n individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion" utilized by law enforcement "cannot be otherwise than under compulsion to speak."  Id. at 461.  Agents of law enforcement must also follow *Miranda*.  *State v. Watson* (1971), 28 Ohio St.2d 15, 26, 275 N.E.2d 153 (explaining that *Miranda* requirements do not apply to admissions to persons who are not officers of the law or their agents).

{¶10}  Under *Miranda*, law enforcement officials and their agents must inform a suspect that: 1.) he has the right to remain silent; 2.) his statements may be used against him at trial; 3.) he has the right to have an attorney present during questioning; and 4.) if he cannot afford an attorney, one will be appointed.  *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, at ¶67, citing *Miranda* at 478-479.  "Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver or himself renews communication with the police."  *State v. Knuckles*, 65 Ohio St.3d 494, 1992-Ohio-64, 605 N.E.2d 54, at paragraph one of the syllabus.  See *Miranda* at 474.

{¶11}  Phillips claims that Rulon and Perry were acting as agents of law enforcement when they questioned him after he invoked his right to counsel.  The State does not contend that Phillips waived his rights, initiated communication with the children services employees, or that Rulon and Perry questioned Phillips with counsel present.  Rather, the State disagrees with Phillips' characterization of Rulon and Perry as law enforcement agents.

**{¶12}** As evidence of the agency relationship between Rulon and Perry and law enforcement, Phillips points to the fact that law enforcement notified children services about the allegation of child abuse via fax. He also highlights the fact that the interview occurred when he was incarcerated. Phillips additionally claims that Rulon and Perry had a "coercive advantage to get [him] to answer their questions as they could remove his children from his care indefinitely if he did not answer their questions." (Appellant's Br. 3). Finally, Phillips emphasizes the fact that children services reported his confession to law enforcement and argues Rulon and Perry had a "self-imposed" duty to "either cooperate with law enforcement or to further the ongoing investigation." (Appellant's Br. 4).

**{¶13}** However, under R.C. 2151.421(D)(1), "[w]hen a municipal or county peace officer receives a report concerning the possible abuse or neglect of a child * * *, upon receipt of the report, the municipal or county peace officer who receives the report shall refer the report to the appropriate public children services agency." Moreover, children services must investigate "within twenty-four hours, each [referred] report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred" to determine the circumstances surrounding the injuries, abuse, or neglect, the cause of the injuries, abuse, or neglect, and the person or persons responsible. R.C. 2151.421(F)(1). Therefore, law enforcement had a statutory duty to notify children services about the allegation, and children services had a statutory duty to investigate.

**{¶14}** We recognize that under the Revised Code, children services' investigation "shall be made in cooperation with the law enforcement agency" and the agency must "submit a report of its investigation, in writing, to the law enforcement agency." Id. And as Phillips points out, at least one district has noted that "a duty to

report to law enforcement officials, or at least a solicitation or recruitment by law enforcement, [is] a predicate for holding that a questioner is an agent for purposes of giving a suspect the *Miranda* warnings." *State v. Evans* (2001), 144 Ohio App.3d 539, 554-555, 760 N.E.2d 909. We construe this language to mean the duty to report is a relevant but not sufficient element at best. And in spite of this duty to cooperate with and submit a report to law enforcement, the evidence in this case falls short of demonstrating that Rulon and Perry acted as agents of law enforcement.

{¶15} In *State v. Coonrod*, Fayette App. No. CA2009–08–013, 2010-Ohio-1102, children services received a report of sexual abuse involving the defendant's five year old daughter. Erica Haithcock, a children services inspector, and her supervisor interviewed Coonrod at the county jail, where he was incarcerated on unrelated charges. Id. at ¶2. The interview took place in a jailhouse conference room, where only Coonrod, Haithcock, and her supervisor were present. Id. Haithcock told Coonrod that he was not required to answer her questions but did not *Mirandize* him. Id. Coonrod "twice denied touching his daughter in a sexually inappropriate manner; however, when asked a third time, [he] put his head down, became 'fidgety' and responded that he 'wanted his daughter to get some help.'" Id. The same day, Haithcock forwarded Coonrod's statements and other evidence to the sheriff's office. Id. at ¶3.

{¶16} Coonrod argued that the trial court erred when it denied his motion to suppress the statements to the inspector. However, the Twelfth District agreed with the trial court that based on the facts in the record, the inspector was not acting as an agent of law enforcement during the interview, finding:

> Nothing in the record indicates that the purpose behind Haithcock's interview was to assist the police in their investigation or that she was otherwise acting as an agent of law enforcement. Haithcock testified that the purpose of her interview was "to advise [appellant] that there was an

allegation of sexual abuse against him from his biological daughter and to ask him about the situation that was reported to [Children Services]." After the interview, Haithcock forwarded the evidence she gathered, including appellant's statements, to the Fayette County Sheriff's Office, where the police subsequently interviewed appellant as part of their own investigation.

In interviewing appellant and reporting her findings to the police, Haithcock was not acting under police direction, but performing her customary duties as a Children Services investigator. As an investigator for Children Services, Haithcock had a legal duty to investigate any complaint concerning child abuse and to report all known or suspected abuse to law enforcement. Further, Haithcock testified that no law enforcement officers participated in her interview with appellant on May 13, 2009. In fact, law enforcement did not become involved in the case until Haithcock forwarded her findings to the Fayette County Sheriff's Office *after* her interview.

In sum, the record reflects that in interviewing appellant, Haithcock was performing her duties as an investigator for Children Services and nothing more. In conducting the interview, Haithcock did not act at the direction, behest or control of * * * any * * * law enforcement official. Further, Haithcock was neither invested with the power to arrest, nor did her duty to enforce Ohio law exceed her statutory duty to report alleged child abuse to the police. Because Haithcock was neither a "law enforcement official" nor an agent thereof, she (1) could not have subjected appellant to "custodial interrogation," as contemplated by *Miranda*, and (2) was not required to advise appellant of his *Miranda* rights prior to the interview on May 13, 2009. * * *

Id. at ¶¶11-13 (internal citations and footnote omitted). See, also, *State v. Simpson* (Feb. 21, 1992), Ross App. No. 1706, 1992 WL 37793 (finding children services employee was not an agent of law enforcement where employee was performing her customary duties, did not act at the direction, control or behest of law enforcement, had no statutory duty to enforce state law, and had no power to arrest).

{¶17} Unlike the interview in *Coonrod*, the interview in this case occurred after a member of law enforcement questioned the defendant about the allegations of child abuse and he invoked his Fifth Amendment rights. But as in *Coonrod*, no evidence suggests that the children services employees who conducted the interview acted at the

direction, behest, or control of law enforcement. Like the employees in *Coonrod*, Rulon and Perry interviewed the defendant while he was incarcerated, but nothing suggests the purpose behind their interview was to assist the police. As in *Coonrod*, no members of law enforcement participated in the interview. Rulon and Perry were simply executing their duty to investigate allegations of child abuse. Contrary to Phillips' suggestion, nothing in the record indicates Rulon or Perry told him they would take his stepdaughter away from him if he did not cooperate. In fact, no evidence suggests they used any techniques of persuasion akin to those the *Miranda* Court was concerned with law enforcement using to compel suspects to speak. Moreover, Phillips does not contend that they had any power to arrest him or had any specific duty to enforce Ohio law.

{¶18} In the absence of any evidence that the Rulon and Perry acted at the direction, control, or behest of law enforcement, we agree with the trial court's conclusion that they were not agents of law enforcement. Therefore, they did not violate Phillips' constitutional rights by questioning him without an attorney after he invoked his Fifth Amendment rights. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha
        Presiding Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**