[Cite as *State v. Johnson*, 2014-Ohio-787.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3381 |
| v. | : | |
| | | DECISION AND |
| CLIFFORD JOHNSON, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 02/28/2014 |

APPEARANCES:

Lori J. Rankin, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

Hoover, J.

{¶ 1} Clifford Johnson appeals the Ross County Common Pleas Court's denial of his motion to suppress. After his motion to suppress was overruled, Johnson pled no contest to one count of aggravated arson, one count of felonious assault, and seven counts of felonious assault on a peace officer. On appeal, Johnson contends that his statements to various third parties while in police custody, and overheard by law enforcement, must be suppressed because he had not been read his *Miranda* rights and because he had invoked his right to counsel. Because law enforcement did not subject Johnson to a custodial interrogation, we disagree. Accordingly, we affirm the judgment of the trial court.

{¶ 2} On October 8, 2011, Johnson engaged in a standoff with officers of the Chillicothe Police Department and Ohio State Highway Patrol at his residence in Chillicothe, Ohio. During the standoff, multiple shots were fired in the direction of the police officers, and a fire broke out

at the residence. Eventually, Johnson was forcefully removed from the burning home and arrested. Upon his removal from the home, Detective Shawn Rourke of the Chillicothe Police Department, and Firefighter Mark Hamann of the Chillicothe Fire Department, began assessing Johnson for injuries. After Firefighter Hamann began asking Johnson questions, but before he had ever been read his *Miranda* rights, Johnson stated that he did not want to talk without the presence of his attorney. Johnson was then transported by ambulance to the Adena Regional Medical Center ("Adena") for medical assessment and treatment. From Adena, Johnson was transported to the Ohio State University Medical Center ("OSU") for further treatment.

{¶ 3} On October 28, 2011, Johnson was indicted by a grand jury on seven counts of felonious assault on a peace officer, all with firearm specifications, one count of felonious assault with a firearm specification, and one count of aggravated arson. Johnson's trial counsel filed a written plea of Not Guilty by Reason of Insanity and requested a competency evaluation. Dr. Jaime C. Adkins evaluated Johnson's competency and sanity. Pursuant to the request of defense counsel, Dr. James R. Hagen conducted a second evaluation. Johnson ultimately stipulated to the findings of both evaluations; and the trial court determined that Johnson was competent to stand trial.

{¶ 4} Johnson then moved to suppress statements he had made after he had been arrested and while he was being transported and treated for injuries. In his motion to suppress, Johnson argued that the statements were obtained without proper advisement of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in violation of the Ohio and United States Constitutions. A hearing on the motion was held on April 25, 2012.

{¶ 5} The following facts were adduced at the suppression hearing. Officer Tad Franklin of the Chillicothe Police Department testified that he and Officer Michael Short accompanied

Johnson in the ambulance during transport to Adena. Officer Franklin testified that during the ambulance ride, Johnson made statements in response to questions from the medics, indicating that he had been arguing with his wife over the purchase of a condominium. Johnson further stated that he started the fire and that he wanted the house to burn down because if he could not have the house, nobody could. Officer Franklin overheard and documented the responses that Johnson made to the medics.

{¶ 6} Officers Franklin and Short also stood guard at Johnson's bedside while Johnson received treatment at Adena. While at Adena, Johnson again made spontaneous statements to himself and to Adena nurses, which were overheard by the officers, including an admission that he had started the fire and that he had been arguing with his wife. Johnson further stated that he fired the gunshots at the officers, but he claimed that he was aiming above them, not at them. According to Franklin, Johnson at one time turned in his direction and stated: "I could have nutted [you] real good." Officer Franklin did not respond to the statement.

{¶ 7} Officer Franklin testified that during the entire time that he and Officer Short were with Johnson, neither of them questioned Johnson, nor engaged Johnson in conversation.

{¶ 8} On October 9, 2011, Officer Micah Shanks of the Chillicothe Police Department was assigned to guard Johnson at OSU.  Officer Shanks testified that while standing guard near Johnson's bedside, he heard Johnson say that his wife wanted to sell his house and buy a condominium. He also heard Johnson say that he did not want to sell the house and that if he could not have the house, nobody could. Officer Shanks could not recall if the statements were directed to medical personnel, or if Johnson had uttered them spontaneously. According to Officer Shanks, he never asked Johnson any questions or otherwise engaged in conversation with Johnson.

{¶ 9} On October 10, 2011, Officer Daniel Cox of the Chillicothe Police Department was assigned to guard Johnson at OSU.  Officer Cox testified that while standing guard near Johnson's bedside, he heard Johnson make comments to a nurse that indicated that he had set the house on fire, and that implied that he had shot at the officers in an effort to scare them. According to Officer Cox, he never asked Johnson any questions or otherwise engaged in conversation with him.

{¶ 10} On October 12, 2011, Johnson had been released from the hospital, and was being held in the Ross County Jail. On that date, Meriam Cogan, a registered nurse working at the jail but employed by Premier Health Care, went to Johnson's jail cell to treat his burns. Nurse Cogan testified that Corrections Officer Matthew Bridenbaugh stood guard while she attended to Johnson's injuries. In order to properly treat Johnson, Nurse Cogan asked him what had caused his burns.  Johnson replied that his wife wanted him to go into debt so he "just burned it[,]" burned his house. Nurse Cogan testified that she was not asked by law enforcement to question Johnson.

{¶ 11} Corrections Officer Bridenbaugh overheard the statements made to Nurse Cogan. Corrections Officer Bridenbaugh testified that he did not question Johnson, and that he did not ask Nurse Cogan to question Johnson.

{¶ 12} After considering the testimony given at the suppression hearing, and argument submitted after the hearing, the trial court issued a written decision overruling the motion to suppress on the grounds that Johnson had not been interrogated, but had rather made the statements voluntarily and spontaneously. Accordingly, the trial court concluded that no *Miranda* or other constitutional violation had occurred.

{¶ 13} On the day of his scheduled trial, Johnson entered a no contest plea to all counts in the indictment in exchange for a sentencing recommendation by the prosecution. Following entry of the no contest plea, the trial court found Johnson guilty of all counts and sentenced him to an aggregate term of 13 years in prison. This matter is now before this Court on delayed appeal.

{¶ 14} Johnson asserts the following assignment of error:

Assignment of Error:

> THE TRIAL COURT ERRED IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶ 15} In his sole assignment of error, Johnson contends that the trial court erred when it overruled his motion to suppress the statements made in the ambulance, at Adena, at OSU, and at the Ross County Jail. At the trial level, Johnson argued that the statements should be suppressed because he had made the comments prior to receiving *Miranda* warnings and because he had invoked his right to counsel. Johnson also argued that the law enforcement officers "subverted" *Miranda* by using others to interrogate him while they listened in on the conversation. On appeal, Johnson again contends that his statements must be suppressed because he had invoked his constitutional right to counsel prior to making the statements. Johnson also renews his argument that law enforcement subverted *Miranda* by utilizing agents, in this case medical personnel, to elicit the incriminating statements.

{¶ 16} Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence.

*State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Burnside* at ¶ 8.

{¶ 17} "In *Miranda,* * * * the United States Supreme Court held that statements made during custodial interrogation, i.e. 'questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,' are admissible only upon a showing that law enforcement officials followed certain procedural safeguards to secure the accused's Fifth Amendment privilege against self incrimination." *State v. Phillips*, 4th Dist. Highland No. 11CA11, 2011-Ohio-6773, ¶ 9, quoting *Miranda*, supra, at 444. Those safeguards include informing the defendant that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda* at 479.

{¶ 18} "[T]he requirement that police officers administer *Miranda* warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24. In other words, "Miranda rights only attach when both custody and interrogation coincide." *State v. Tellington*, 9th Dist. Summit No. 22187, 2005-Ohio-470, ¶ 8, citing *State v. Wiles*, 59 Ohio St.3d 71, 83, 571 N.E.2d 97 (1991). "Moreover, 'an individual has a right to counsel only when he is in custodial interrogation, as a suspect, or once adversary proceedings have commenced and he becomes a defendant. *See*, e.g., *Davis v. United States* (1994), 512 U.S. 452, 456-457, 114 S.Ct. 2350, 129 L.Ed.2d 362. The person can only invoke that right during those times.' " *State v. Guysinger*, 4th Dist. Ross No. 11CA3251, 2012-Ohio-4169, ¶ 12, quoting *State v. Adams*, 11th Dist. Trumbull No. 2003-T-0064, 2005-Ohio-348,

¶ 43. In the case sub judice, we conclude that law enforcement never subjected Johnson to a custodial interrogation. Accordingly, Johnson never had the right to counsel, and the trial court did not err in denying his motion to suppress. *See*, e.g., *Guysinger* at ¶ 12.

{¶ 19} Initially, we note that Johnson was in the custody of law enforcement when the statements at issue were made. "[A]n individual has been placed into custody [if] * * *, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.' " *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), quoting *U.S. v. Medenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Here, Johnson had been arrested at the scene of the crime and his hands were bound by zip ties prior to transport to Adena. Moreover, uniformed police officers accompanied Johnson in the ambulance, at Adena, and at OSU. Thus, it goes without saying that a reasonable person in Johnson's position would "have believed that he was not free to leave."[1] Nonetheless, the statements are not required to be suppressed under *Miranda* and its progeny because they were not the product of law enforcement interrogation.

{¶ 20} "The 'term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 18, quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

{¶ 21} "[T]o determine whether a suspect has been 'interrogated,' the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that

---

[1] The State also stipulated at the suppression hearing and on appeal that Johnson was in custody when the statements were made.

coercion." *State v. Tucker*, 81 Ohio St.3d 431, 436, 692 N.E.2d 171 (1998). Thus, "[a] suspect who volunteers information without being asked any questions is not subject to a custodial interrogation and is not entitled to *Miranda* warnings." *Williams* at ¶ 19, citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997). "When defendant initiates communication, 'nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.' " *Id.*, quoting *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also State v. Fry*, 4th Dist. Gallia No. 86CA15, 1988 WL 38822, *8 (Apr. 21, 1988) ("[S]tatements obtained by police after a person has been taken into custody are admissible when given freely, voluntarily, and not the result of interrogation without the *Miranda* safeguards.").

{¶ 22} In denying Johnson's motion to suppress, the trial court determined that Johnson "was not subjected to interrogation by anyone[,]" and that "[u]pon [his] request for counsel, police officers immediately ceased all dialog with him." The trial court further found that "[a]ny and all statements that [Johnson] made thereafter were made voluntarily and spontaneously."

{¶ 23} A review of the suppression hearing evidence supports the trial court's finding that Johnson's incriminating remarks were not the product of law enforcement interrogation, but were rather voluntary and spontaneous statements. The officers testified that they never questioned Johnson regarding the incident, that they never engaged in casual conversation with Johnson, and that they never responded to any of the remarks he made while in their custody. Because Johnson's statements were not the result of custodial interrogation, but were instead made freely and voluntarily, the trial court did not err in finding that the statements were admissible. *See Guysinger*, 2012-Ohio-4169, at ¶ 26 ("And because Guysinger was not subjected to a custodial interrogation, he did not have the right to counsel.")

{¶ 24} Johnson also contends that law enforcement subverted *Miranda* requirements and his request for counsel by utilizing medical personnel to elicit the incriminating remarks. The trial court noted in its decision that "there is no evidence that any health care provider, or fire department employee, acted at the direction, control, or behest of law enforcement." The trial court further noted that "there is no evidence that law enforcement manipulated the circumstances to increase their ability to listen to or hear any conversation between [Johnson] and others. In fact the evidence demonstrates that [Johnson] purposely spoke in a voice loud enough so that law enforcement officers would hear his statements."

{¶ 25} We first note that, generally speaking, statements directed toward third parties and overheard by law enforcement do not amount to a circumvention of *Miranda*. *See Fry*, 1988 WL 38822, at *8 ("*Miranda* requirements do not apply to admissions by accused to persons who are not law enforcement officials or their agents. * * * In the case sub judice the statements made by appellant were not the result of questioning by law enforcement officers or even directed to a law enforcement official, but rather were statements to a third party which was overheard by Deputy Mullins."); *State v. Corbin*, 12th Dist. Fayette No. CA2010-01-001, 2010-Ohio-3819, ¶ 10 ("[B]ecause appellant was not subject to custodial interrogation while speaking to her mother within earshot of Officer Sever, the trial court did not err by denying appellant's motion to suppress."); *State v. Ambartsoumov*, 10th Dist. Franklin No. 09AP-1054, 2010-Ohio-6293, ¶ 72 (In case where police officer overheard incriminating statements while accompanying accused in ambulance, the appellate court noted that "officer's conduct while accompanying [accused] in the ambulance to the hospital did not rise to the level of a custodial interrogation."). Furthermore, " '[a] person not a police officer, or not acting in concert with or at the request of police authority, is not required to extend constitutional warnings prior to the eliciting of an incriminating

statement.' " *State v. Gregory*, 4th Dist. Pike No. 440, 1990 WL 138557, *2 (Sept. 25, 1990), quoting *State v. Peoples*, 28 Ohio App.2d 162, 165, 275 N.E.2d 626 (7th Dist.1971).

{¶ 26} Here, the police officers overheard statements that Johnson made either spontaneously, or in response to questions from the health care providers. As the trial court noted, the officers did not manipulate the circumstances in order to increase their ability to hear Johnson.[2] Moreover, the officers were at all times dressed in identifiable police uniform. It is also not disputed that the medics, nurses, and other health care providers are not law enforcement officers. More importantly, however, the health care providers were not acting at the direction, control, or behest of law enforcement. Nurse Cogan was the only health care provider to testify at the suppression hearing and she expressly denied that law enforcement asked her to interrogate Johnson. Several officers also testified that they did not direct any health care providers to question Johnson.

{¶ 27} In the absence of any evidence that the health care providers acted at the direction, control, or behest of law enforcement, we agree with the trial court's conclusion that they were not agents of law enforcement. Therefore, they did not violate Johnson's constitutional rights by questioning him without the presence of an attorney, or by failing to administer *Miranda* warnings.

{¶ 28} Based on the foregoing, Johnson's sole assignment of error is overruled. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

---

[2] We note that Johnson does not argue that his communications were privileged. We therefore reserve judgment on the issue of privileged communications.

**JUDGMENT ENTRY**

It is ordered that the trial court's JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion.

For the Court

By:_____
          Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.